OSEN LLC
ATTORNEYS AT LAW
WWW.OSENLAW.COM

2 UNIVERSITY PLAZA, SUITE 402, HACKENSACK, NJ 07601      1441 BROADWAY, SUITE 6022, NEW YORK, NY 10018
T. 201.265.6400   F. 201.265.0303                        T.212.354.0111

May 8, 2019

**VIA FEDEX AND ECF**

Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      **Re:**    ***Honickman, et al. v. BLOM Bank SAL*, No. 1:19-cv-00008-KAM-SMG**

Dear Judge Matsumoto:

      Plaintiffs respectfully write in response to Defendant's May 3, 2019 letter.

      The Complaint alleges sufficient facts to satisfy 18 U.S.C. §2333(d) as enacted by Congress through the Justice Against Sponsors of Terrorism Act ("JASTA"), which expressly found that *Halberstam v. Welch,* 705 F.2d 472 (D.C. Cir. 1983) "provides the proper legal framework for how such liability should function in the context of Chapter 113B of title 18, United States Code." Eighteen U.S.C. §2333 (note), §2(a)(5). The Court of Appeals followed this directive in *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018) ("we are mindful that Congress, in enacting JASTA, instructed that the 'proper legal framework for how [aiding and abetting] liability should function' under the ATA is that identified in *Halberstam*").

      *Linde* then restated and applied *Halberstam*'s elements (as Congress required):

(1) the party whom the defendant aids must perform a wrongful act that causes an injury;
(2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time he provides the assistance; and
(3) the defendant must knowingly and substantially assist the principal violation.

*Id.* (quoting *Halberstam*, 705 F.2d at 487). Plaintiffs' allegations satisfy all three elements.

**Wrongful Act**

      The Complaint identifies the terrorist attacks HAMAS committed, planned and authorized that killed and injured Plaintiffs and their representatives. *See* Complaint ¶¶13, 76, 207, 240, 299, 318, 337-39, 390, 407, 413-14, 486, 491.

**General Awareness**

*Halberstam* held that "[t]he district court's conclusions that Hamilton *knew about* and acted to support *Welch's illicit enterprise* [not the murder] establish that Hamilton had a general awareness of her *role in a continuing criminal enterprise*. The second element is thus satisfied." 705 F.2d at 488 (emphasis added). *Linde* interpreted *Halberstam* to require "aware[ness]" that by assisting the principal, defendant was "assuming a 'role' in terrorist activities." *Id*. at 329. It expressly rejected any requirement that this necessitates proof of specific intent "*to participate* in a criminal scheme as 'something that [defendant] wishes to bring about and seek by his action to make it succeed.'" *Id.* (emphasis added). Nor did *Linde* require awareness of the specific acts at issue. *Id.* In fact, *Halberstam* held that plaintiff did not even have to prove that "Hamilton knew specifically that Welch was committing burglaries," as long as she knew he was involved "in some type of personal property crime at night—whether as a fence, burglar, or armed robber made no difference—because violence and killing is a foreseeable risk in any of these enterprises." 705 F.2d at 488.

BLOM disregards this straightforward legal standard, arguing that "[e]ven if BLOM did have reason to believe that its customers were in some way affiliated with Hamas, that awareness alone would not subject BLOM to aiding and abetting liability because Plaintiffs have not alleged facts demonstrating that the bank had any sense that its routine banking services might be playing a role in terrorism." Letter at 2. The Complaint, however, specifies that senior HAMAS leader Ahmed Muhammad Abd al-Hadi served on the board of BLOM's customer, Sanabil Association for Relief and Development ("Sanabil") together with HAMAS's chief fundraiser in Lebanon, Abdallah Atawat. Complaint ¶¶591-592. Exhibit D to the Complaint even provides *evidence* of funds transfers made by the HAMAS fundraising organization Al Aqsa Foundation to Sanabil's account at BLOM – *after* Al Aqsa was designated a terrorist by the United States.

**Substantial Assistance**

The parties agree that the factors a court must consider in determining whether a defendant has provided "substantial assistance" to a primary tortfeasor (in this case HAMAS) are:

(1) the nature of the act encouraged;
(2) the amount of assistance given by defendant;
(3) defendant's presence or absence at the time of the tort;
(4) defendant's relation to the principal;
(5) defendant's state of mind; and
(6) the period of defendant's assistance.

*Linde* at 329, 330. As set forth below, the Complaint plausibly alleges that BLOM provided substantial assistance to HAMAS.

***The nature of the act encouraged.*** "[T]he *nature of the act* involved dictates what aid might matter, *i.e.,* be substantial." *Halberstam*, 705 F.2d at 484. *Halberstam* found that the "long-

running burglary enterprise [was] heavily dependent" on laundering the goods, *id.* at 488, which was assisted by defendant Hamilton who served as her boyfriend's "banker, bookkeeper, recordkeeper, and secretary," *id.* at 487. Moreover, "[u]nder the 'nature of the act' criterion, a court might also apply a proportionality test to particularly bad or opprobrious acts, *i.e.,* a defendant's responsibility for the same amount of assistance increases with the blameworthiness of the tortious act or the seriousness of the foreseeable consequences." *Id.*, at 484 n.13. Thus, *Halberstam* found that "[a]lthough Hamilton's own acts were neutral standing alone, they must be evaluated in the context of the enterprise they aided, *i.e.,* a five-year-long burglary campaign against private homes." *Id.* at 488. Here, even assuming arguendo that Defendant's banking activities were "neutral standing alone," they must be evaluated in the context of the "blameworthiness" of the horrific acts HAMAS perpetrated and the "seriousness" of the foreseeable consequences of providing substantial, contemporaneous support to that terrorist organization.[1]

*The amount of the assistance.* "The *amount [and kind] of assistance given* the wrongdoer is also a significant factor . . . ." *Halberstam*, 705 F.2d at 484. Money is the lifeblood of terrorism, and as in *Halberstam*, "integral" to its operation. *Id.* Further, the amount of assistance is "influence[d]" by the duration of the assistance provided." *Id.* (emphasis omitted). Thus, in *Halberstam*, "although the *amount of assistance* [chiefly money laundering and tax preparation] Hamilton gave Welch [her burglar boyfriend] may not have been overwhelming as to any given burglary in the five-year life of this criminal operation, it added up over time to an essential part of the pattern." *Id.* at 488. Here, Defendant allegedly provided HAMAS significant amounts of support continually for years in the midst of an ongoing terror campaign during the Second Intifada. *See, e.g.,* Complaint ¶599 – table listing payments from the Holy Land Foundation (convicted HAMAS fundraiser). *See also,* Complaint ¶¶600-606.

*Presence at the time of the tort.* In *Halberstam*, "Hamilton was admittedly not *present at the time* of the murder or even at the time of any burglary," but "the success of the tortious enterprise clearly required expeditious and unsuspicious disposal of the goods, and Hamilton's role in that side of the business was substantial." *Id.* at 488. Here, BLOM was also not "present at the scene," but HAMAS's terror campaign required significant funding and the U.S. Government has determined that Defendant's (SDGT) customers played a significant role in fueling HAMAS, conduct BLOM facilitated. Complaint ¶¶590, 635.

*Relationship to the principal.* BLOM served as a willing banker for two primary HAMAS fundraisers in Lebanon, Sanabil and the Union of Good.[2] By soliciting funds for HAMAS, these organizations engaged in what are defined as "terrorist activities" by the Immigration and Nationality Act, incorporated into §2339B(a)(1). The relationship was intimate, because a banker must know and communicate with its customers, approve transfers in and out of customers'

---

[1] The Executive Branch has found, and the Supreme Court has agreed, that "'[m]aterial support' is a valuable resource by definition." *Holder*, 561 U.S. 1, 30 (2010). "[I]t is highly likely that any material support to these organizations will ultimately inure to the benefit of their criminal, terrorist functions—regardless of whether such support was ostensibly intended to support non-violent, non-terrorist activities." *Id.* at 33 (quoting government affidavit setting out the Executive Branch's view, to which the Court deferred).

[2] It also allegedly provided services to a third, less prominent HAMAS fundraiser, Subul al-Khair.

accounts, and apply regulatory requirements to such transfers. The Complaint amply alleges the continuing nature of the relationship BLOM maintained with these notorious HAMAS institutions.

**Defendant's state of mind.** *Halberstam* emphasized that Hamilton's assistance was knowing, long-term, and continuous, not some "passing fancy or impetuous act." 705 F.2d at 488. BLOM's alleged assistance to Sanabil and the Union of Good was likewise knowing, long-term, and continuous, reflecting its intentional, deliberate decision to render that assistance. Complaint ¶¶596, 603, 621-28, 629-40. *Halberstam* also held that "[t]he particularly offensive nature of an underlying offense might also factor in this criterion. 705 F.2d at 484 n.13. Nothing is more offensive than mass killings and maiming of innocent civilians, including children.

**Duration of assistance.** *Halberstam* added this "important" factor to those delineated in the Restatement (Second) of Torts §876 (1979) because it "almost certainly affects the quality and extent of their relationship and probably influences the amount of aid provided as well; additionally, it may afford evidence of the defendant's state of mind." *Id.* at 484. In *Halberstam*, this factor "strongly influenced [the court's] weighing of Hamilton's assistance. It affected [the court's] sense of how Hamilton perceived her role and of the value of her assistance to Welch." *Id.* Plaintiffs have alleged that BLOM assisted HAMAS for *years*, even after Sanabil was designated. BLOM's conduct was continuous, extensive, and critical to the success of HAMAS's terror campaign.

We will be prepared to address the relevant issues at the pre-motion conference.

Respectfully submitted,

/s/ Gary M. Osen

cc:   All Counsel