UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------- x
MICHAL HONICKMAN, *et al.*, :
:
              Plaintiffs, :
:
    - against - :  No. 1:19-cv-00008-KAM-SMG
:
BLOM BANK SAL, :
:
              Defendant. :
:
---------------------------------------- x


**REPLY MEMORANDUM IN FURTHER SUPPORT OF
DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**


                DECHERT LLP
                Linda C. Goldstein
                Three Bryant Park
                1095 Avenue of the Americas
                New York, New York 10036
                (212) 698-3500

                Michael H. McGinley (*pro hac vice*)
                Selby P. Brown (*pro hac vice*)
                Justin M. Romeo (*pro hac vice*)
                Cira Centre
                2929 Arch Street
                Philadelphia, Pennsylvania 19104
                (215) 994-4000

                *Attorneys for Defendant BLOM Bank SAL*

**TABLE OF CONTENTS**

Page

I. The Complaint Fails to Plausibly Satisfy JASTA's *Mens Rea* Requirement. ................... 1

II. The Complaint Fails to Allege that BLOM Knowingly Provided Substantial Assistance Either to HAMAS or to the Individual Attackers. ........................... 4

    A. The Complaint Fails to Establish a Direct Link Between BLOM and Hamas. ................................................................................................................ 5

    B. The Facts of *Halberstam* Are Not Analogous to the Complaint's Allegations. ........................................................................................................ 7

III. The Complaint's JASTA Claim Is Insufficient as a Matter of Law. ............................... 8

IV. Even Setting Aside the Complaint's General Failure to Allege a JASTA Claim, Certain Individual Plaintiffs' Claims Are Insufficient ...................................... 10

CONCLUSION ................................................................................................................ 10

## TABLE OF AUTHORITIES

CASES         Page(s)

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................. 8, 9

*Halberstam v. Welch*,
   705 F.2d 472 (D.C. Cir. 1983) ............................................................................................. 5, 7

*In re Farm Family Cas. Ins. Co. (Trapani)*,
   753 N.Y.S.2d 198 (3d Dep't 2003) ......................................................................................... 10

*Lelchook v. Islamic Republic of Iran*,
   No. 16-cv-07078, 2019 WL 2647998 (E.D.N.Y. June 27, 2019) ....................................... 3, 10

*Linde v. Arab Bank, PLC*,
   882 F.3d 314 (2d Cir. 2018) ............................................................................................ passim

*Miller v. Arab Bank, PLC*,
   372 F. Supp. 3d 33 (E.D.N.Y. 2019) ........................................................................ 3, 8, 9, 10

*Morris v. Khadr*,
   415 F. Supp. 2d 1323 (D. Utah 2006) ..................................................................................... 10

*O'Sullivan v. Deutsche Bank AG*,
   No. 17-cv-8709, 2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019) ................................................ 9

*Siegel v. HSBC Bank USA, N.A.*,
   No. 17-cv-6593, 2018 WL 3611967 (S.D.N.Y. July 27), *appeal filed*, No. 18-
   2540 (2d Cir. Aug. 27, 2018) .................................................................................................... 9

*Strauss v. Credit Lyonnais, S.A.*,
   379 F. Supp. 3d 148 (E.D.N.Y.), *appeal filed*, No. 19-1285 (2d Cir. Apr. 26,
   2019) ........................................................................................................................................ 9

*Weiss v. Nat'l Westminster Bank, PLC*,
   381 F. Supp. 3d 223, 2019 WL 1441118 (E.D.N.Y.), *appeal filed sub nom.*,
   *Appelbaum v. Nat'l Westminster Bank, PLC*, No. 19-1159 (2d Cir. Apr. 16,
   2019) ........................................................................................................................................ 9

*Weiss v. Nat'l Westminster Bank PLC*,
   453 F. Supp. 2d 609 (E.D.N.Y. 2006) ...................................................................................... 5

**STATUTES**

18 U.S.C. § 2333(a) .................................................................................................2

18 U.S.C. § 2333(d)(2) .............................................................................................5

**LEGISLATIVE MATERIALS**

S. 1535, 113th Cong. (as introduced in Senate, Sept. 19, 2013)......................................4

S. 2390, 111th Cong. (as introduced in Senate, Dec. 23, 2009) ......................................4

S. 2040, 114th Cong. (as introduced in Senate, Sept. 16, 2015)......................................4

S. 2040, 114th Cong., Manager's Amendment SIL16008 (adopted by S. Comm. on the Judiciary, Jan. 28, 2016), Redline *available at* https://bit.ly/2YaHt62 ...........................4

S. 2040, 114th Cong. (as reported by S. Comm. on the Judiciary, Feb. 3, 2016)............................4

S. 2040, 114th Cong. (as enacted on Sept. 12, 2016) ......................................................4

Statement of Sen. Cornyn, Exec. Business Meeting, S. Comm. on the Judiciary, Jan. 28, 2016, *video available at* https://bit.ly/2XVyJWl.........................................................4

Plaintiffs' response to BLOM's motion to dismiss ("Pls.' Br.") confirms two critical deficiencies in their Complaint: it does not plausibly allege that BLOM was generally aware that it was playing a role in any violent or life-endangering activities; and it does not plausibly allege that BLOM knowingly provided substantial assistance to anyone connected to the Attacks in this case.[1] As explained in BLOM's opening brief, the plain text of JASTA and the Second Circuit's decision in *Linde v. Arab Bank, PLC*, 882 F.3d 314 (2d Cir. 2018) preclude Plaintiffs' claims. And Plaintiffs' response to BLOM's motion does not remotely suggest otherwise. Instead, they invite this Court to apply a *mens rea* standard that the Second Circuit has explicitly *rejected*, rely on misleading snippets from pre-JASTA precedents, and complain that recent decisions supporting BLOM's motion are "erroneous." Pls.' Br. at 17. Their baseless plea for discovery does not cure these defects. Their Complaint should be dismissed with prejudice.

## I. The Complaint Fails to Plausibly Satisfy JASTA's *Mens Rea* Requirement.

Plaintiffs have failed to plausibly allege facts that would satisfy JASTA's *mens rea* standard. To state a claim under JASTA, Plaintiffs must plausibly allege that "in providing [financial] services, the bank was 'generally aware' that it was thereby playing a 'role' in Hamas's violent or life-endangering activities." *Linde*, 882 F.3d at 329–30; *see also id.* at 330 (defendant must be generally aware it was "playing a role in violent or life-endangering acts whose apparent intent was to intimidate or coerce civilians or to affect a government"). But Plaintiffs' allegations could not plausibly support a finding that BLOM knew it was playing a role in *any* violent or life-endangering activities. At most, Plaintiffs urge that BLOM had "awareness of its role in HAMAS's fundraising activities," without alleging that BLOM's alleged customers committed any violent or life-threatening acts or that BLOM was aware of

---

[1] Capitalized terms not defined here are defined in BLOM's opening brief ("BLOM Br.").

such acts. Pls.' Br. at 18. To the contrary, Plaintiffs' opposition concedes that the Alleged Account Holders were at most part of Hamas' "*da'wa*" civil structure.  Pls.' Br. at 3.

Instead of complying with the legal standard articulated by the Second Circuit in *Linde*, Plaintiffs misstate it. Their brief repeatedly omits *Linde*'s references to "violent or life-endangering activities," even when quoting the immediately surrounding language. *E.g.*, Pls.' Br. at 10–13, 17. Then, relying on cases decided before JASTA was enacted, Plaintiffs insist that the statute demands only that a defendant participate in activities carrying a foreseeable risk that terrorist activities might result. *E.g.*, Pls.' Br. at 11 (citing *Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202, 208–09 (2d Cir. 2014); *Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 432 (E.D.N.Y. 2013)). As a result, Plaintiffs incorrectly seek to replace JASTA's *mens rea* requirement with the lower standard required for material support claims. Pls.' Br. at 11.

But *Linde* forecloses that sleight of hand. The *Linde* plaintiffs had brought primary liability claims under the ATA, which required them to prove that they were injured "by reason of an act of international terrorism." *Linde*, 882 F.3d at 320; 18 U.S.C. § 2333(a). An act qualifies as "international terrorism" only if it "involve[s] violence or endanger[s] human life." *Linde*, 882 F.3d at 326. The *Linde* trial court incorrectly instructed the jury that if the defendant had provided material support to an FTO, that finding "necessarily proved the bank's commission of an act of international terrorism." *Id.* at 325. On appeal, the Second Circuit held that this instruction was wrong because the "provision of material support to a terrorist organization does not invariably equate to an act of international terrorism." *Id.* at 326.

In doing so, the Second Circuit rejected the theory proffered by Plaintiffs here. The *Linde* plaintiffs, represented by the same counsel, had argued that the incorrect instruction was harmless because the "post-trial enactment of JASTA . . . eliminate[d] the need to prove that

Arab Bank's own actions involved violence or danger and appeared intended to intimidate or coerce civilians or to influence or affect governments." *Id.* at 328. The Second Circuit disagreed, holding instead that to be liable under JASTA, a defendant must be "generally aware" it was "playing a 'role' in [an FTO's] violent or life endangering activities." *Id.* at 329.[2]

The "two recent JASTA decisions . . . related to terror financing" cited by Plaintiffs confirm that the "violent or life endangering activities" requirement is central to *Linde*'s holding. Pls.' Br. at 10. In *Lelchook v. Islamic Republic of Iran*, No. 16-cv-07078, 2019 WL 2647998, at *4 (E.D.N.Y. June 27, 2019), the Court held that JASTA's *mens rea* standard requires that a defendant bank be "'generally aware' that it was playing a 'role' in Hezbollah's violent or life-endangering activities." And, in *Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33, 47 (E.D.N.Y. 2019), the Court held that to satisfy JASTA, a defendant "must have been 'generally aware that it was thereby playing a role in Hamas's violent or life-endangering activities.'" As explained in BLOM's opening brief, even accepting Plaintiffs' allegations as true, they cannot support a plausible inference that BLOM played a role in Hamas's *violent or life-endangering activities*, let alone that BLOM *knew* it was playing such a role. BLOM Br. at 16–19.

Nor can Plaintiffs' invocation of JASTA's stated "purpose" in its legislative history cure the deficiencies in their Complaint. Pls.' Br. at 8–9. Rather, the legislative evolution of JASTA supports the importance of the statute's *mens rea* standard. JASTA's statement of purpose was

---

2   Indeed, the court held that the *Linde* jury's finding that Arab Bank "provided material support in the form of financial services *to what it knew* was a designated terrorist organization" was legally insufficient to establish a JASTA aiding and abetting claim. *Id.* (emphasis added). As detailed in BLOM's opening brief, Plaintiffs have not plausibly alleged that BLOM knew it was providing financial services to a designated terrorist organization. BLOM Br. at 13–20. Thus, as acknowledged by the fact that they have not alleged a primary violation of the ATA against BLOM, Plaintiffs' allegations here do not even rise to the level of establishing material support.

-3-

originally drafted in 2009. S. 2390, 111th Cong. § 2 (as introduced in Senate, Dec. 23, 2009). It was not materially modified in the seven years before the statute was enacted in 2016. By contrast, Congressional debate during that period resulted in significant tightening of the *mens rea* element. In 2009, JASTA's proposed *mens rea* element required only that a "person or entity . . . aided, abetted, *provided material support* or resources . . . to . . . the person or persons who committed such an act of international terrorism." S. 2390, 111th Cong. § 5(d) (emphasis added). A later version of the bill struck the "material support" language. S. 1535, 113th Cong. § 4 (as introduced in Senate, Sept. 19, 2013). And finally, to get the votes needed to pass JASTA in the House, the Senate heightened the *mens rea* standard for aiding and abetting by requiring that a Defendant must "knowingly provid[e] substantial assistance."[3] Plaintiffs cannot rely upon general "purpose" language to undermine JASTA's explicit *mens rea* requirement—especially when that requirement was added in order to obtain the votes needed to enact the statute.

## II. The Complaint Fails to Allege that BLOM Knowingly Provided Substantial Assistance Either to HAMAS or to the Individual Attackers.

Plaintiffs' allegations fail to create a plausible inference that Hamas was a BLOM customer or that BLOM provided any assistance to any person or entity directly involved with the Attacks. In fact, Plaintiffs' insistence that the allegations in this case resemble the facts in

---

[3] *See* Statement of Sen. Cornyn, Exec. Business Meeting, S. Comm. on the Judiciary, Jan. 28, 2016 (explaining that an amendment modifying the aiding and abetting standard was made "in order to gain consensus for [the] legislation") *video available at* https://bit.ly/2XVyJWl (beginning at 50:55); S. 2040, 114th Cong., Manager's Amendment SIL16008(adopted by S. Comm. on the Judiciary, Jan. 28, 2016), Redline *available at* https://bit.ly/2YaHt62; *compare* S. 2040, 114th Cong. § 4 (as introduced in Senate, Sept. 16, 2015) ("liability may be asserted as to any person who aided, abetted, or conspired with the person who committed such an act of international terrorism"), *with* S. 2040, 114th Cong. § 4 (as reported by S. Comm. on the Judiciary, Feb. 3, 2016) ("liability may be asserted as to any person who aids and abets, *by knowingly providing substantial assistance*. . . .") (emphasis added); S. 2040, 114th Cong. § 4 (as enacted on Sept. 12, 2016) (same).

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), reveals only how far short the Complaint falls from alleging the elements of knowledge and substantial assistance.

### A. The Complaint Fails to Establish a Direct Link Between BLOM and Hamas.

To establish an aiding and abetting claim, Plaintiffs must establish that BLOM knowingly aided and abetted the "person" who committed the Attacks, which in this case means either Hamas or the individual Attackers.[4] 18 U.S.C. § 2333(d)(2); *Halberstam*, 705 F.2d at 489. As explained in BLOM's opening brief, Plaintiffs have not alleged facts that plausibly come close to satisfying that requirement. Despite Plaintiffs' conclusory labeling of BLOM as "HAMAS's banker," Pls.' Br. at 1, Plaintiffs identify only three Alleged Account Holders, none of which was Hamas or any other FTO. Compl. ¶¶ 588, 623, 640.

Plaintiffs have not plausibly alleged that the Alleged Account Holders were agents or aliases of Hamas, let alone that BLOM knew that they were during the relevant time period. To establish an agency or alias relationship, plaintiffs must allege that one organization "so dominates and controls" a separate juridical entity "that the latter can no longer be considered meaningfully independent from the former." *Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609, 623 (E.D.N.Y. 2006). In making that determination, courts consider, among other things, "whether the organizations share leadership, whether they comingle finances, publications, offices and personnel, and whether one operates as a division of the other." *Id.* "Merely providing financial support" or even "supporting the terrorist objective of an FTO" will "not suffice to show that an organization is so dominated and controlled so as to have lost its

---

[4] Plaintiffs erect a strawman when they contend that BLOM is arguing for a "traceability" requirement. Pls.' Br. at 26. BLOM has done no such thing. Under JASTA, Plaintiffs must show that BLOM aided and abetted the "person" who carried out the Attacks, which the Complaint does not do with respect to either Hamas or the Attackers.

independent identity." *Id.* Rather, Plaintiffs must plausibly allege that the supposed alias was either "controlled by" or "run on behalf of" the terrorist organization. *Id.* Moreover, because Plaintiffs are required to show that BLOM "knowingly" provided substantial assistance, Plaintiffs must also plausibly allege that BLOM *knew of* the Alleged Account Holders' purported relationship with Hamas. *See Linde*, 882 F.3d at 329.

Plaintiffs' allegations fall far short of that standard. The Complaint does not allege that *any* of the Alleged Account Holders comingled finances, publications, offices, or personnel with Hamas during the relevant time period. Plaintiffs' barebones allegations that BLOM knew of shared leadership between Hamas and Sanabil or Union of Good depends upon (i) their SDGT designations, which did not occur until *after* all of the Attacks in this case, (ii) the designation of Union of Good by Israel, a country in which BLOM does not operate, or (iii) the conclusory assertion that, at some unspecified time, it was supposedly "well-known" that certain Sanabil board members were also Hamas leaders. Pls.' Br. at 18–19; Compl. ¶¶ 590–91, 634–35.

Plaintiffs' efforts to conflate the Alleged Account Holders with Hamas by pointing to transfers from Non-Account Holders designated as SDGTs is equally unavailing. Pls.' Br. at 18–21. Those designations were either made after the last of the Attacks, or (with respect to HLF) no transfers are alleged to have been made after the designation. BLOM Br. at 18–19. And Plaintiffs' reliance upon a single transfer to Alleged Account Holder Sanabil from Non-Account Holder Al-Aqsa one day after Al-Aqsa was designated as an SDGT, Pls.' Br. at 18, 20, ignores that the alleged transfer (i) originated from a Swedish bank, (ii) was cleared through Bank of New York, and (iii) was earmarked for "HELP CONCERNING ORPHAN CHILDREN." Compl. Ex. D; Brown Decl. Ex. 1. Plaintiffs proffer no facts explaining why BLOM should have assigned a nefarious meaning to that statement, especially since they concede that Sanabil *did*

distribute cash to orphans in refugee camps in Lebanon. Pls.' Br. at 20–21; Compl. ¶ 611. None of these allegations, taken alone or collectively, can show that BLOM knowingly provided substantial assistance to Hamas's violent activities before the Attacks.

**B.     The Facts in *Halberstam* Are Not Analogous to Plaintiffs' Allegations.**

Plaintiffs' efforts to analogize their case to the facts in *Halberstam* prove only how different the two cases are. In *Halberstam*, the court concluded Linda Hamilton knowingly provided substantial assistance to her live-in romantic partner's burglary enterprise. 705 F.2d at 472. The finding that Hamilton possessed the required knowledge of the criminal enterprise was based on her knowledge of her partner's "pattern of unaccompanied evening jaunts over five years, his boxes of booty" kept in their shared basement, "the smelting of gold and silver" in their shared home, "the sudden influx of great wealth" from which Hamilton directly benefited, "the filtering of all transactions" related to the sale of stolen goods "through Hamilton *except* the payout for [the acquisition of] goods," and "Hamilton's collusive and unsubstantiated treatment of income and deductions on her tax forms." *Id.* at 486 (emphasis in original). Based on those facts, the court concluded that Hamilton provided "invaluable service to the enterprise as banker, bookkeeper, recordkeeper, and secretary," and that "[s]he performed these services in an unusual way under unusual circumstances for a long period of time." *Id.* at 487.

Plaintiffs' allegations are nothing like the facts of *Halberstam*. Pls.' Br. 21–25. For example, Plaintiffs try to compare Hamilton's provision of assistance "in an unusual way under unusual circumstances" to BLOM's routine processing of incoming bank transfers to the Alleged Account Holders (who were not then designated as SDGTs). Pls.' Br. at 22. But all the Complaint shows is that BLOM processed routine financial transactions from one organization it had no reason to believe was affiliated with Hamas to another organization it had no reason to

believe was affiliated with Hamas. Plaintiffs' allegations are not like the unusual assistance allegations in *Miller*, in which the court found that Arab Bank was administering an "Insurance Scheme for individuals whose cause of death included 'Martyr Operation.'" 372 F. Supp. 3d at 47. Elsewhere, Plaintiffs claim that BLOM's purported provision of financial services to the Alleged Account Holders was as "integral" to HAMAS's terrorist operations as Hamilton's assistance to the burglary enterprise. Pls.' Br. at 24. But BLOM's degree of assistance—processing wire transfers to organizations it had no reason to think were involved in violent acts of terrorism (and which were not FTOs)—does not remotely approach the type of assistance provided by Hamilton in *Halberstam*.

### III.     The Complaint's JASTA Claim Is Insufficient as a Matter of Law.

To survive a motion to dismiss, Plaintiffs' Complaint must contain allegations sufficient to "nudge[] their claims across the line from conceivable to plausible," meaning "allegations plausibly suggesting (not merely consistent with)" satisfaction of JASTA's elements. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Faced with a mountain of law showing that their Complaint falls short of this standard, Plaintiffs attempt to distinguish those cases by urging that they were decided with the benefit of a full record or by claiming that fact disputes are for a jury to weigh. At one point, Plaintiffs even go so far as to imply that a court may never resolve the substantial assistance inquiry as a matter of law, relying on a deceptively incomplete quote from *Linde*, from which Plaintiffs omit the Court's explanation that the element could not be resolved "from the record in th[at] case." Pls.' Br. at 23; *Linde*, 882 F.3d at 328.

Plaintiffs' misdirection is transparent. Whether a case was decided with the benefit of a full trial record does not alter the rule of law that emerges from the case. And, at this stage, there are no disputes of fact. As it must, BLOM has "assum[ed] that all the allegations in the

complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. If anything, this procedural posture should *help* Plaintiffs, as BLOM cannot introduce evidence to rebut their allegations. Nonetheless, Plaintiffs impermissibly ask the Court to overlook their inadequate allegations and let them fish for support in discovery. For example, Plaintiffs ask the Court to forgive their failure to allege any connection between BLOM and Union of Good—other than an account number untethered to transactions or time—because they have not yet had the "benefit of discovery." Pls.' Br. at 8 n.5. But that request rings particularly hollow given the Complaint's lists of transactions with the other Alleged Account Holders, which presumably were drawn from the discovery Plaintiffs have already obtained in their many other ATA actions.

In reality, courts have not hesitated to dismiss JASTA claims where, as here, plaintiffs have not met their burden to establish a plausible theory of liability. *See, e.g.*, *O'Sullivan v. Deutsche Bank AG*, No. 17-cv-8709, 2019 WL 1409446, at *10 (S.D.N.Y. Mar. 28, 2019) (granting motion to dismiss JASTA claims); *Siegel v. HSBC Bank USA, N.A.*, No. 17-cv-6593, 2018 WL 3611967, at **4–5 (S.D.N.Y. July 27), *appeal filed*, No. 18-2540 (2d Cir. Aug. 27, 2018) (same); *see Weiss v. Nat'l Westminster Bank, PLC*, 381 F. Supp. 3d 223, 238–39 (E.D.N.Y.) (concluding that amending complaint to add JASTA claims would be futile based on summary judgment standard), *appeal filed sub nom.*, *Appelbaum v. Nat'l Westminster Bank, PLC*, No. 19-1159 (2d Cir. Apr. 16, 2019); *Strauss v. Credit Lyonnais, S.A.*, 379 F. Supp. 3d 148, 162 (E.D.N.Y.) (same), *appeal filed*, No. 19-1285 (2d Cir. Apr. 26, 2019).

Moreover, Plaintiffs' Complaint stands in stark contrast to the cases declining to dismiss JASTA claims. For instance, in *Miller v. Arab Bank, PLC*, the plaintiffs alleged that Arab Bank processed payments as part of an insurance scheme for families of "martyrs." 372 F. Supp. 3d at 47–48. And in *Lelchook v. Islamic Republic of Iran*, this Court entered a default judgment

against an unrepresented defendant where the complaint specifically alleged that the financial accounts at issue were "controlled by Hezbollah." 2019 WL 2647998 at **1, 6. No such allegations have been made in this case.

## IV. Even Setting Aside the Complaint's General Failure to Allege a JASTA Claim, Certain Individual Plaintiffs' Claims Are Insufficient.

Nor has Plaintiffs' brief undermined the shortcomings in the allegations of the Steinherz plaintiffs or Matanya Nathensen. Even if the Court were to credit Plaintiffs' impermissible efforts to rely upon allegations not in the Complaint, Pls.' Br. at 29 n.15, Plaintiffs contend that the Steinherzes' injuries were sustained *after* the Attack, *after* they believed they were safe, *after* they were on their way home, and *because* they saw a "crazed-looking man" who is not alleged to have been an Attacker. Compl. ¶¶ 468–70. Plaintiffs provide no authority explaining how such facts can satisfy the proximate cause requirement, instead directing the Court to a case not involving an intervening actor or event, which occurred both physically and temporally close to the relevant accident. *In re Farm Family Cas. Ins. Co. (Trapani)*, 753 N.Y.S.2d 198, 200 (3d Dep't 2003). With regard to Matanya Nathensen, because he is not a United States citizen, he has standing to bring a claim based only on the damages he sustained as a result of his citizen daughter's tragic death and not other damages he may have sustained in the Attack. *See* Compl. ¶¶ 138–39 (describing Mr. Nathensen's physical injuries); *see Miller*, 372 F. Supp. 3d at 41; *Morris v. Khadr*, 415 F. Supp. 2d 1323, 1337–38 (D. Utah 2006).

## CONCLUSION

For the foregoing reasons and for those stated in BLOM's opening memorandum of law, BLOM respectfully requests that the Court dismiss the Complaint with prejudice.

Dated: New York, New York
July 29, 2019

                         DECHERT LLP

               By:      /s/ *Linda C. Goldstein*
                         Linda C. Goldstein
                         Three Bryant Park
                         1095 Avenue of the Americas
                         New York, New York 10036
                         (212) 698-3500

                         Michael H. McGinley (*pro hac vice*)
                         Selby P. Brown (*pro hac vice*)
                         Justin M. Romeo (*pro hac vice*)
                         Cira Centre
                         2929 Arch Street
                         Philadelphia, Pennsylvania 19104
                         (215) 994-4000

                         *Attorneys for Defendant BLOM Bank SAL*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------- x
MICHAL HONICKMAN, *et al.*,              :
                                         :
                 Plaintiffs,             :
                                         :
        - against -                      :   No. 1:19-cv-00008-KAM-SMG
                                         :
BLOM BANK SAL,                           :
                                         :
                 Defendant.              :
                                         :
---------------------------------------- x

## CERTIFICATE OF SERVICE

I hereby certify on this 29th day of July, 2019, I caused a true and correct copy of Defendant's Reply Memorandum in Further Support of Defendant's Motion to Dismiss the Complaint to be sent by email to counsel of record for Plaintiffs at the following email addresses:

| | |
|---|---|
| Gary M. Osen (gosen@osenlaw.com) | Clyde T. Turner (tab@tturner.com) |
| Gerard Filitti (gfilitti@osenlaw.com) | Turner and Associates |
| Dina Gielchinsky (dgielchinsky@osenlaw.com) | 4705 Somers Ave Suite 100 |
| Michael Jacob Radine (mradine@osenlaw.com) | North Little Rock, AR 72116 |
| Aaron Schlanger (aschlanger@osenlaw.com) | Steven M. Steingard (ssteingard@kohnswift.com) |
| Cindy T. Schlanger (cschlanger@osenlaw.com) | Stephen H. Schwartz (sschwartz@kohnswift.com) |
| Ari Ungar (aungar@osenlaw.com) | Neil Glazer (nglazer@kohnswift.com) |
| Osen LLC | Kohn, Swift & Graf, PC |
| 2 University Plaza | 1600 Market Street, Suite 2500 |
| Suite 402 | Philadelphia, PA 19103 |
| Hackensack, NJ 07601 | |

Dated: July 29, 2019

                                   _____
                                            Selby P. Brown