UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
MICHAL HONICKMAN FOR THE ESTATE OF  :
HOWARD GOLDSTEIN, *et al.*,                     :
                                                            :
                         Plaintiffs,            :        No. 19-cv-0008-KAM-SMG
                                                            :
          -against-                                  :
                                                            :
BLOM BANK SAL,                                   :
                                                            :
                         Defendant.           :
-------------------------------------------------------------------x


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
<u>VACATE THE JUDGMENT</u>**

## TABLE OF CONTENTS

PROCEDURAL BACKGROUND ..................................................................................... 3

I.      Complaint and Pre-Motion Conference ............................................................ 3

II.     The Motion to Dismiss Briefing ....................................................................... 5

III.    The November 25, 2019, Oral Argument ......................................................... 6

IV.     The District Court's Decision on the Motion to Dismiss ................................. 8

V.      The Honickman Appeal .................................................................................... 9

VI.     The Second Circuit's Assessment of the Court's Dismissal Decision ........... 10

STANDARD OF REVIEW ......................................................................................... 14

ARGUMENT .............................................................................................................. 14

I.      This Court Should Vacate the Judgment in Order to Grant Leave to Amend Because
        Plaintiffs Did Not Have a Meaningful Opportunity to Do so Before. ............. 14

        A.      BLOM's Purported Distinctions Are Specious ........................................... 18

        B.      The Court's Prior Invitations to Amend Do Not Constitute Grounds for Denying
                Plaintiffs' Motion to Amend. ..................................................................... 20

II.     Plaintiffs Should Be Given the Opportunity to Meet the "Correct Standard." ....... 25

        A.      None of the *Foman* Grounds for Denying a Motion to Amend Apply to Plaintiffs'
                Motion to Amend. ..................................................................................... 25

        B.      Plaintiffs' Pleading Deficiencies Were Reasonably Made and Readily Corrected. .... 28

CONCLUSION ........................................................................................................... 30

# **TABLE OF AUTHORITIES**

**Cases**

*Abate v. Fifth Third Bank*,
No. 13-cv-9078 (VSB), 2019 WL 2409792 (S.D.N.Y. June 6, 2019)........................................ 17

*Ackermann v. United States*,
340 U.S. 193 (1950)................................................................................................................ 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................................ 25

*Averbach for Est. of Averbach v. Cairo Amman Bank*,
No. 19-cv-4-GHW, 2020 WL 1130733 (S.D.N.Y. Mar. 9, 2020)........................................... 23

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................................ 25

*Berman v. Morgan Keegan & Co.*,
455 F. App'x 92 (2d Cir. 2012) .............................................................................................. 22

*Block v. First Blood Assocs.*,
988 F.2d 344 (2d Cir. 1993) ............................................................................................ 15, 28

*Brennan v. City of White Plains*,
No. 97-cv-2709 (RWS), 1998 WL 75692 (S.D.N.Y. Feb. 18, 1998)....................................... 27

*Charles Schwab Corp. v. Bank of Am. Corp.*,
883 F.3d 68 (2d Cir. 2018) .................................................................................................... 24

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991) .............................................................................................. 15, 23

*Faryniarz v. Ramirez*,
62 F. Supp. 3d 240 (D. Conn. 2014)........................................................................................ 3

*Foman v. Davis*,
371 U.S. 178 (1962)....................................................................................... 1, 15, 16, 26

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
756 F.2d 230 (2d Cir. 1985) .................................................................................................. 28

*Gonzales v. Google LLC*,
2 F.4th 871 (9th Cir. 2021) ..................................................................................................... 5

*Halberstam v. Welch*,
   705 F.2d 472 (D.C. Cir. 1983) ............................................................... 2

*Herman v. Town of Cortlandt, Inc.*,
   No. 18-cv-2440 (CS), 2019 WL 2327565 (S.D.N.Y. May 30, 2019) ..................................... 22

*Herman v. Town of Cortlandt, Inc.*,
   No. 18-cv-2440 (CS), 2019 WL 9247129 (S.D.N.Y. Dec. 27, 2019) ..................................... 22

*Honickman for Est. of Goldstein v. BLOM Bank SAL*,
   432 F. Supp. 3d 253 (E.D.N.Y. 2020) ........................................... 4, 9, 12, 18

*Honickman v. Blom Bank SAL*,
   6 F.4th 487 (2d Cir. 2021) ................................................ *passim*

*Indiana Pub. Ret. Sys. v. SAIC, Inc.*,
   818 F.3d 85 (2d Cir. 2016) ............................................. 15, 19

*Kaplan v. Lebanese Canadian Bank, SAL*,
   405 F. Supp. 3d 525 (S.D.N.Y. 2019) .................................. 6, 9

*Kaplan v. Lebanese Canadian Bank, SAL*,
   999 F.3d 842 (2d Cir. 2021) ............................................ *passim*

*LeBlanc v. Cleveland*,
   248 F.3d 95 (2d Cir. 2001) ............................................... 14

*Linde v. Arab Bank, PLC*,
   882 F.3d 314 (2d Cir. 2018) ............................................. 2, 13

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015) ............................................. 1, 21

*Matarese v. LeFevre*,
   801 F.2d 98 (2d Cir. 1986) ............................................... 24

*Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*,
   970 F.3d 133 (2d Cir. 2020) ............................................. 17

*Obra Pia Ltd. v. Seagrape Invs. LLC*,
   No. 19-cv-7840-RA, 2021 WL 1978545 (S.D.N.Y. May 18, 2021) ..................................... 22

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
   555 U.S. 438 (2009).......................................................... 25

*Radack v. Norwegian Am. Line Agency, Inc.*,
   318 F.2d 538 (2d Cir. 1963) ............................................. 14

*Ronzani v. Sanofi S.A.*,
    899 F.2d 195 (2d Cir. 1990) ......................................................................... 23

*Rosner v. Star Gas Partners, L.P.*,
    344 F. App'x 642 (2d Cir. 2009) ................................................................. 22

*Ruotolo v. City of New York*,
    514 F.3d 184 (2d Cir. 2008) ................................................................. 15, 27

*Sargent v. Columbia Forest Prod., Inc.*,
    75 F.3d 86 (2d Cir. 1996) ............................................................................ 19

*Schonfeld v. Hilliard*,
    No. 95-cv-3052 (MBM), 1997 WL 171372 (S.D.N.Y. Apr. 10, 1997) ................... 27

*Scott v. Gardner*,
    344 F. Supp. 2d 421 (S.D.N.Y. 2004) ........................................................ 19

*Simone v. Prudential Ins. Co. of Am.*,
    164 F. App'x 39 (2d Cir. 2006) ................................................................. 19

*St. Paul Fire & Marine Ins. Co. v. Heath Fielding Ins. Broking Ltd.*,
    No. 91-cv-0748, 1996 WL 19028 (S.D.N.Y. Jan. 17, 1996) .......................... 27

*State Teachers Retirement Bd. v. Fluor Corp.*,
    654 F.2d 843 (2d Cir. 1981) ................................................................. 26, 27

*Strauss v. Crédit Lyonnais, S.A.*,
    No. 06-cv-0702 (CPS), 2006 WL 2862704 (E.D.N.Y. Oct. 5, 2006) ................. 30

*Taamneh v. Twitter, Inc.*,
    343 F. Supp. 3d 904 (N.D. Cal. 2018) ......................................................... 5

*Travelers Indem. Co. v. Sarkisian*,
    794 F.2d 754 (2d Cir. 1986) ..................................................................... 19

*United States v. Bank of New York*,
    14 F.3d 756 (2d Cir. 1994) ....................................................................... 19

*Valjean Mfg. Inc. v. Michael Werdiger Inc.*,
    No. 03-cv-6185 (HB), 2004 WL 876056 (S.D.N.Y. Apr. 21, 2004) ................. 27

*Weiss v. Nat'l Westminster Bank PLC*,
    453 F. Supp. 2d 609 (E.D.N.Y. 2006) ........................................................ 29

*Williams v. Citigroup Inc.*,
    659 F.3d 208 (2d Cir. 2011) ............................................................ *passim*

**Statutes**

18 U.S.C. § 2333(d)(2) .................................................................................................................. 3

**Rules**

Fed. R. Civ. P. 15(a) ..................................................................................................... 1, 4, 14, 30

Fed. R. Civ. P. 60(b) ............................................................................................................ 15, 30

Fed. R. Civ. P. 60(b)(6) .......................................................................................................... 1, 14

Pursuant to Federal Rules of Civil Procedure 15(a) and 60(b)(6), Plaintiffs respectfully submit this Memorandum of Law in support of their motion to vacate the judgment (and, ultimately, for leave to amend). Vacatur and amendment are appropriate here because the Second Circuit rejected the pleading standards this Court applied in its dismissal of the complaint for failure to state a claim, affirming the dismissal only on a narrow ground, premised on a pleading standard not used by this Court. *See Honickman v. Blom Bank SAL*, 6 F.4th 487, 498-501 (2d Cir. 2021). The Circuit also identified specific types of allegations that could cure Plaintiffs' pleading deficiencies. *See id.* at 502. Furthermore, while the *Honickman* appeal was pending, the Second Circuit also decided *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021), which also identified types of allegations sufficient to plead a JASTA aiding and abetting claim.

The Second Circuit and the Supreme Court have made it clear that a request to amend a complaint that addresses genuine pleading deficiencies can *itself* be grounds for vacatur, *see, e.g.*, *Williams v. Citigroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011) and *Foman v. Davis*, 371 U.S. 178, 182 (1962), and have done so even where the district court *correctly* dismissed the complaint, making this case a much stronger one for vacatur than those.

This Court has raised one distinction here—it offered Plaintiffs two opportunities to amend before issuing its decision dismissing the complaint with prejudice, both of which Plaintiffs declined. The Second Circuit, however, disfavors relying on invitations to amend at a pre-motion conference (or later) "[w]ithout the benefit of a ruling [as] many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). Here, the first decision setting forth the correct pleading standard was issued *by the Second Circuit*, at which point Plaintiffs promptly sought amendment before this Court.

The Court's two invitations to amend came, first, during the pre-motion conference for BLOM's motion to dismiss and, second, at oral argument on that motion (which argument reflected the positions set forth in the parties' pre-motion conference letters). For example, at that initial pre-motion conference, the Court asked Plaintiffs if they would like to amend, given the "standards that were adopted by the Second Circuit from the D.C. Circuit"—presumably referring to *Linde v. Arab Bank, PLC*, 882 F.3d 314 (2d Cir. 2018) and *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) (which were referenced in BLOM's pre-motion conference letter). These "standards" and "arguments" articulated by BLOM and subsequently adopted by this Court were entirely incorrect—indeed, the Second Circuit held that "*[t]he court's conclusion contravenes both Halberstam and Linde ....*" *Honickman*, 6 F.4th at 497 (emphasis added). And yet BLOM now argues that Plaintiffs have waived their right to amend by declining invitations to amend their complaint to meet incorrect standards. The argument is Kafkaesque.

The Circuit affirmed this Court's dismissal solely "because the allegations do not support an inference that BLOM Bank was aware of the Three Customers' ties with Hamas prior to the relevant attacks." *Id.* at 501. This Court misapplied each of the JASTA elements it assessed, and although it reached the same conclusion as to BLOM's awareness of these ties to Hamas, the Second Circuit found the Court's assessment of these allegations "too exacting" and impermissibly premised on the incorrect standards the Circuit rejected in *Kaplan*. *Id.* Instead, the Circuit noted a handful of *specific*, *factual* deficiencies in Plaintiffs' allegations that were *not self-evident* when Plaintiffs alleged them (as shown below, Plaintiffs reasonably relied on inferences found sufficient in other cases). Thus, whereas the Circuit and Supreme Court have permitted vacatur and post-judgment amendment to present entirely new theories, Plaintiffs here present the least-expansive request to amend: to address specific, factual deficiencies.

2

Because vacatur is a procedural prerequisite to amending a complaint post-judgment, the Court asked the parties to first brief the specific issue of whether vacatur is appropriate here. However, as a court in the Circuit noted, the Second Circuit has "direct[ed] the district court to consider the nature of proposed amendments filed post-judgment," and that court "therefore refrain[ed] from denying the instant motion [to amend post-judgment] until it has considered the merits of the claims Plaintiff asserts in his proposed amended complaint." *Faryniarz v. Ramirez*, 62 F. Supp. 3d 240, 248 (D. Conn. 2014). Because the Court here has decided to consider futility in a later brief (if at all), it should, as a matter of law, assume for purposes of this motion that the proposed amended complaint is not futile.

## **PROCEDURAL BACKGROUND**

### I.      **Complaint and Pre-Motion Conference**

Plaintiffs filed their complaint on January 1, 2019. ECF No. 1. On May 3, 2019, BLOM filed a letter requesting a pre-motion conference to initiate a motion to dismiss the complaint for failure to state a claim, setting forth a summary of its anticipated arguments. ECF No. 20. BLOM argued, *inter alia*, that the complaint failed to plausibly plead "general awareness" because it failed to allege that the bank "was aware that the banking services it provided to those customers were connected to alleged terrorist activities," and "because Plaintiffs have not alleged facts demonstrating that the bank had any sense that its routine banking services might be playing a role in terrorism." *Id.* at 2. BLOM also argued that "defendant is liable only if it *directly* aided and abetted the '*person*' who committed the relevant '*act* of international terrorism.' But Plaintiffs do not allege that any BLOM account holder committed the attacks that caused their harms." *Id.* at 3 (quoting 18 U.S.C. § 2333(d)(2)) (emphasis in original).

Plaintiffs responded on May 8, 2019, providing a summary of their anticipated opposition. ECF No. 21. In their response, Plaintiffs argued that *Halberstam*'s scienter standard governed their

claims, noting that foreseeability was the key factor in assessing a defendant's wrongful conduct. As shown below, this analysis proved to be correct.

The Court held a pre-motion conference on May 15, 2019. At the pre-motion conference, the Court began by raising *sua sponte* whether BLOM had an affirmative defense based on the statute of limitations. May 15, 2019 Transcript ("Tr.") at 4:13-19. It then stated:

> I am just wondering if it might be prudent to allow the plaintiffs to amend their complaint, not to add more claims, not to add more parties, but rather to factually support some of the claims that you [defense counsel] have identified as being deficient regarding the standards that were adopted by the Second Circuit from the D.C. Circuit. Mr. Osen, do you want that opportunity? Because as you probably well know, in the Second Circuit if I were to grant the 12(b)(6) motion generally, the Second Circuit would like the district courts to allow an amendment unless it would be futile.
>
> Are there any additional facts you could add to the allegations that the defendant is challenging here or are you comfortable standing on your complaint as it is?
>
> I am not asking for more, obviously, because it is very lengthy, but I just wanted to raise that.

*Id.* at 5:23-6:13 (presumably referring to *Linde* and *Halberstam*, referenced in BLOM's letter).[1]

Plaintiffs' counsel responded, "No, I think we are prepared to brief it based on the arguments presented in the pre-motion letter." *Id.* at 6:15-16. Notwithstanding Plaintiffs' entitlement to amend under Rule 15(a) as of right, the Court noted its desire to avoid "another round of motions," and counsel again stated, "sitting here today based on what was represented as the arguments in the pre-motion letter, we would not seek leave to amend." *Id.* at 6:22-24. This was entirely appropriate given that Plaintiffs' readings of *Linde* and *Halberstam* ("the standards

---

[1] It is unclear whether the Court had already decided to adopt Defendant's interpretation of *Linde*'s gloss on *Halberstam*, but in its January 14, 2020, decision, the Court expressly adopted Defendant's view of *Linde*, holding that "[i]n light of this precedent, it is not enough for Plaintiffs to 'plausibl[y] allege that BLOM was 'generally aware of [its] role' in 'terrorist activities,' from which terrorist attacks were a natural and foreseeable consequence.'" *Honickman for Est. of Goldstein v. BLOM Bank SAL*, 432 F. Supp. 3d 253, 264 (E.D.N.Y. 2020) (citing Pls.' Opp. to Mot. to Dismiss at 11, ECF No. 37).

that were adopted by the Second Circuit from the D.C. Circuit") were significantly different from those asserted by BLOM and later adopted by this Court.

Following the telephonic pre-motion conference, the Court issued a Minute Entry and Scheduling Order noting that: "The parties discussed Defendant's proposed motion to dismiss. The Court offered Plaintiffs an opportunity to amend their complaint *to add additional information in response to the arguments raised by Defendant*. Plaintiffs declined to do so and represented that they would not be seeking to amend their Complaint in this regard." May 15, 2019, Minute Order (emphasis added). Needless to say, the arguments "raised by Defendant" proved to be incorrect.

## II.   The Motion to Dismiss Briefing

The parties briefed the motion to dismiss, in which they presented arguments largely consistent with the summaries set forth in their pre-motion letters. BLOM argued, *inter alia*, that:

- "Nowhere does the Complaint plead facts that would establish that those charities were involved in any terrorist activities, or that BLOM was aware of such involvement, let alone that BLOM knowingly and substantially assisted those persons who allegedly committed the terrorist acts." BLOM Opening MTD Br. at 1, ECF No. 36-1.

- "To successfully plead such a claim, a plaintiff must plausibly allege facts showing that the defendant knowingly provided substantial assistance to the perpetrator of the relevant act of terrorism and that, when doing so, the defendant was generally aware that it was assuming a role in violent or life-threatening acts." *Id.* (citing *Linde*, 882 F.3d at 329–30).

- "[I]n *Taamneh*, allegations that defendant social media companies knew that ISIS (a designated Foreign Terrorist Organization) had used their platforms to recruit members, raise funds, and spread propaganda were insufficient to satisfy JASTA's scienter requirement." *Id.*at 13 (citing *Taamneh v. Twitter, Inc.*, 343 F. Supp. 3d 904, 917 (N.D. Cal. 2018)).[2]

- "Plaintiffs have not alleged facts suggesting that BLOM in any way encouraged Hamas' terrorist acts or provided moral support for the Attacks." *Id.* at 24.

---

[2]      The district court's decision in *Taamneh* was subsequently reversed and vacated in *Gonzales v. Google LLC*, 2 F.4th 871 (9th Cir. 2021).

- "Plaintiffs' allegations come nowhere close to establishing a 'direct relationship' between BLOM and the persons who caused Plaintiffs' injuries. Plaintiffs allege that the Attacks at issue were committed by 15 individual terrorist operatives (collectively, 'the Attackers'). But nothing in the Complaint could be construed as showing that BLOM directly aided and abetted—or even actually knew of—any one of the actual Attackers." *Id.* at 25 (internal citations omitted).

## III.  The November 25, 2019, Oral Argument

The Court held oral argument on November 25, 2019, during which defense counsel further elaborated on BLOM's arguments in light of the district court decision in *Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525 (S.D.N.Y. 2019), *vac'd in part*, 999 F.3d 842 (2d Cir. 2021), which was issued after briefing on BLOM's motion had been completed:

> The *Kaplan* plaintiffs asserted that Lebanese Canadian Bank knew or should have known that the customers were affiliated with Hezbollah, and Judge Daniels expressly noted that Lebanese Canadian Bank had later been designated a primary money laundering concern, and that it had forfeited $102 million to the U.S. government after being charged with involvement in a money laundering scheme with links to Hezbollah.
>
> Nonetheless, Judge Daniels still held that those allegations were not enough to show general awareness of a role in violent or life-threatening activities. Similarly, Judge Daniels held that the complaint did not plead substantial assistance because it did not allege that Hezbollah actually received any of the funds that had gone into the five customers' accounts or that the defendant knew or intended that Hezbollah would receive the funds. Those allegations, we contend, Your Honor, are far stronger than anything alleged in this case against Bank BLOM.
>
> In sum there is nothing in the complaint that adequately alleges knowing participation or substantial assistance to a terrorist attack. Because the plaintiffs expressly declined the opportunity to amend their complaint after receiving our premotion conference letter, we respectfully request that the complaint be dismissed with prejudice.
>
> …
>
> Finally, I wanted to point out that *the level of knowledge that Judge Daniels rejected in Kaplan was very much what's claimed here*, where it said that it was notorious that there were links between the accounts at issue there, between those persons and in that case, Hezbollah. And that's exactly what's said here. *It was apparently notorious that BLOM should have known that these accounts were linked to HAMAS, but there's no direct allegation of why BLOM should have known that.* As

I pointed out earlier, the designations by the U.S. Government all postdate it, the activities at issue here.

Nov. 25, 2019 Tr. at 11:12-12:11, 31:24-32:9 (emphasis added).

The Court then asked Plaintiffs, *inter alia*, "But you don't have any direct evidence, do you, that Sanabil actually directly funded terrorist activities with funds on account or that had transferred through the BLOM Bank, do you?" *Id.* at 17:22-25. It also stated that Plaintiffs "have to show some knowledge on the part of the bank, don't you, that they knew that the funds that they were … assisting with, the transactions that they were assisting with, were going towards terrorist activities." *Id.* at 18:7-11.[3]

Refuting Defendant's argument that the *Kaplan* lower court decision correctly applied JASTA to the facts pleaded in that case, Plaintiffs' counsel responded:

> ***Kaplan* requires a level of proof that is out of step with JASTA, out of step with *Linde* and would be impossible to meet.** Just reading from page six of that decision, "Plaintiffs do not advance any factual non-conclusory allegations that defendants knowingly and intentionally supported Hezbollah in perpetrating the rocket attacks."
>
> That's not a standard that courts have required plaintiffs to meet. It wouldn't operate in *Halberstam*. Ms. Hamilton did not knowingly, intentionally assist her boyfriend in murdering Dr. Halberstam.
>
> The *Kaplan* case also requires – I'll just read it again from page six, "Plaintiffs do not plausibly allege that Hezbollah received any of those funds or that defendant knew or intended that Hezbollah receive the funds, nor do they sufficiently allege that defendant knew prior to the attacks that any affiliations between Hezbollah and the five customers, whether there were those affiliations."
>
> This is not our allegation here. Our allegation here is that any money for Sanabil is a money for HAMAS. It's also the finding of the U.S. government. It's our allegation that that was something that was known to BLOM. I think it was certainly known to LCB as well, but that was that decision in that case.

---

[3]       As noted above, the correct standard was whether a defendant "'was generally aware ... that it was playing a role in unlawful activities from which [terrorist] attacks were foreseeable.'" *Honickman*, 6 F.4th at 498 (quoting *Kaplan*, 999 F.3d at 860-61).

> Respectfully, a case that requires knowledge of purchasing of rockets is, a[t] a minimum, is going to render the ATA a dead letter, and certainly make *Halberstam* irrelevant to the analysis.

*Id.* at 27:10-28:12 (emphasis added).

In the course of the oral argument, the Court reiterated Plaintiffs' decision not to replead made at the pre-motion conference:

> I do recall that you did not want an opportunity to try to replead, which is usually what we try to encourage the plaintiffs to do before motion practice. And I think the Second Circuit may not encourage district courts to allow another round of pleading if there's been a declination of an opportunity to replead before motion practice. So everything I need to consider in terms of sufficiency of your pleading is going to be found in the complaint that's filed in this case, correct? …. There are no facts that you would have to offer to address some of the contentions of the defendants regarding knowledge, especially?

*Id.* at 25:3-12. Plaintiffs' counsel responded, "I think we could always add allegations, but … we believe the complaint goes far enough in saying that BLOM holding accounts for Specially Designated Global Terrorists designated for this conduct for financing HAMAS, was generally aware of its role in that [il]licit conduct, and … the violence that resulted from it was foreseeable, as was the case in *Linde*." *Id.* at 25:17-23.

Thus, Plaintiffs declined the Court's invitation to replead based on their understanding at that time of the correct pleading standard and the elements of aiding and abetting under JASTA. Plaintiffs did not believe they should *or could* amend their complaint to meet the "level of knowledge" required in *Kaplan*, as urged by Defendant, or the standard stated by the Court requiring showing "knowledge on the part of the bank" that the transactions they were assisting were "going towards terrorist activities."

## IV.   The District Court's Decision on the Motion to Dismiss

The Court granted BLOM's motion to dismiss, largely on the grounds BLOM raised, and by relying heavily on the lower court decision in *Kaplan*. The Court called *Kaplan* "a more

appropriate comparison" and "a more appropriate point of reference" than other JASTA and ATA cases to which Plaintiffs analogized their complaint. *Honickman for Est. of Goldstein*, 432 F. Supp. 3d 253, 266, 269 (E.D.N.Y. 2020).

The Court also specifically quoted the *Kaplan* lower court's finding that "plaintiffs 'nowhere allege[d] … that [LCB] read or was aware of such [media] sources'" publicly linking bank customers to a terrorist group and concluded that "[t]he same analysis applies even more strongly here." *Id.* at 267 (quoting *Kaplan*, 405 F. Supp. 3d at 535). As a result, the Court found that "Plaintiffs do not allege any acts or statements by BLOM or BLOM's employees which suggest any awareness on its part of a connection between any of the Three Customers and Hamas," and faulted Plaintiffs for relying on "press articles, government actions, and allegedly 'public knowledge' discussing" such a connection. *Id.* at 265. As discussed below, the Court also applied incorrect standards for general awareness and substantial assistance.

Finally, the Court noted that "[i]n light of Plaintiffs' rejection of the opportunity to amend their pleading at the pre-motion conference, and the fact that they have not identified any additional facts they could allege which would address the deficiencies in their complaint, the Court finds that it need not grant Plaintiffs leave to amend." *Id*. at 270-71.

## V.   The Honickman Appeal

Plaintiffs timely appealed this Court's January 14, 2020, decision on February 13, 2020. The parties completed briefing on September 4, 2020. On November 19, 2020, *Kaplan* was argued before the Second Circuit. On December 10, 2020, *Honickman* was argued. A week later, the Second Circuit stayed the *Honickman* appeal pending resolution of the then-pending appeal in *Kaplan* and ordered the parties to submit supplemental briefing on the effect of that decision, once issued, on *Honickman*. On June 9, 2021, the Second Circuit vacated *Kaplan* as to its dismissal of

the plaintiffs' JASTA aiding and abetting claims against Lebanese Canadian Bank ("LCB"), and the *Honickman* parties submitted supplemental briefs on July 9, 2021.

The Second Circuit then issued its decision in *Honickman* on July 29, 2021, rejecting this Court's standard for assessing JASTA aiding and abetting claims and essentially all of BLOM's arguments, but ultimately affirmed dismissal on the ground that Plaintiffs failed to satisfactorily allege that BLOM was aware, before the relevant attacks, that its "Three Customers" were Hamas affiliates. As shown below, however, the Circuit held that this Court failed to apply the correct standard for assessing that showing—which is why Plaintiffs should be afforded the opportunity to meet it now.

## VI.  The Second Circuit's Assessment of the Court's Dismissal Decision

The Circuit "agree[d with Plaintiffs] that the court did not apply the proper standard…." *Honickman*, 6 F.4th at 490. Specifically, the Second Circuit rejected every standard this Court applied as grounds for dismissal, including the standard for alleging BLOM's knowledge of its customers' affiliation with Hamas, as well as to the general awareness and substantial assistance elements, which together "form the crux of most JASTA aiding-and-abetting cases." *Id.* at 496.

The Second Circuit affirmed the judgment entirely on one ground: "We conclude that Plaintiffs' aiding-and-abetting claim fails because the allegations do not support an inference that BLOM Bank was aware of the Three Customers' ties with Hamas prior to the relevant attacks, thereby undermining the second element of general awareness." *Id.* at 501. Although this Court came to the same conclusion, the Second Circuit specifically rejected the standard this Court applied to Plaintiffs' knowledge allegations:

> In assessing this element, the district court found that the complaint's references to media articles and publications on the Three Customers' connection to Hamas were insufficient because "Plaintiffs fail[ed] plausibly to allege that BLOM [Bank] ... actually knew or should have known of any of the cited sources." However, as we explained in *Kaplan*, Plaintiffs did not need to allege that BLOM Bank knew or

should have known of the public sources at the pleading stage. Such a requirement
at this juncture would be too exacting.

*Id.* (citations omitted).

As stated above, this Court relied on the *Kaplan* lower court's enunciation of the same

erroneous standard. The Second Circuit, in vacating *Kaplan*, clarified that "[a] complaint is

allowed to contain general allegations as to a defendant's knowledge because 'a plaintiff

realistically cannot be expected to plead a defendant's actual state of mind,'" although plaintiffs

must "include allegations of the facts or events they claim give rise to an inference of knowledge."

*Kaplan*, 999 F.3d at 864 (citations omitted). Accordingly, although the district court in *Kaplan* had

focused on the fact that the plaintiffs "nowhere allege[d] ... that [LCB] read or was aware of

[English-language publication] sources," it was in fact required "to accept as true the above factual

allegations as to the repeated multimedia statements by Hizbollah, to consider all of the

complaint's allegations, rather than considering each in isolation, and to accept as true all

permissible inferences that could be drawn from the complaint as a whole." *Id.* at 865. This

correction is critical because while Plaintiffs' proposed amended complaint would add numerous

allegations and cite to various publications and websites in English, French and Arabic—all of

which add to the "permissible inferences" of BLOM Bank's contemporaneous knowledge that it

was providing substantial assistance to Hamas—those allegations would not have satisfied the

*Kaplan* district court's "read or was aware of" requirement as adopted by this Court.

As to general awareness, the Second Circuit in *Honickman* explained that "[t]he defendant

need not be generally aware of its role in the specific act that caused the plaintiff's injury; instead,

it must be generally aware of its role in an overall illegal activity from which the act that caused

the plaintiff's injury was *foreseeable*." 6 F.4th at 496. This Court did not apply this standard:

The district court, however, rejected the foreseeability principle, holding that "it is
not enough for Plaintiffs to plausibl[y] allege that BLOM [Bank] was generally

11

aware of [its] role in terrorist activities, from which terrorist attacks were a natural
and foreseeable consequence." *Honickman*, 432 F. Supp. 3d at 264. The court's
conclusion contravenes both *Halberstam* and *Linde v. Arab Bank, PLC*, 882 F.3d
314 (2d Cir. 2018), one of the first cases in which we interpreted aiding-and-
abetting liability under JASTA.

*Id.* at 497 (footnote omitted). *See also id.* at 498 (explaining that "the district court misread" *Linde*,

"erred in equating the foreseeability standard and the scienter required for criminal material

support," and "implicitly perceived *Linde* as requiring *more* than the *Halberstam* standard for

general awareness, which we rejected in *Kaplan*"). The Second Circuit implicitly identified other

errors, as well. *Compare, e.g.*, 432 F. Supp. 3d at 266 ("The complaint does not allege that the

Three Customers engaged in any 'violent activities.'") *and* 6 F.4th at 499 n.15 ("Contrary to

BLOM Bank's argument, the Three Customers do not themselves need to be 'engaged in ... violent

or terrorist acts.'").[4]

Additionally, the Second Circuit's *Honickman* and *Kaplan* decisions reject this Court's

assertion that "[t]he Second Circuit has clarified that the mere provision of routine banking

services to an FTO [Foreign Terrorist Organization] does not render a bank liable for civil aiding

and abetting." *Honickman*, 432 F. Supp. 3d at 264. The *Kaplan* court explained that "*Linde* noted

that its statement—that 'the mere provision of "routine banking services to organizations and

individuals said to be affiliated with" terrorists' is not sufficient to show that **the defendant itself**

**committed an act of terrorism**—was made '*in the context of a challenge to proof of the causation*

---

[4]      The Second Circuit also rejected BLOM's argument that providing indirect assistance changes the pleading
standard: "BLOM Bank argues in its post-argument letter brief that under *Kaplan*, 'where a complaint alleges that the
assistance was indirect, it must allege (among other things) that the defendant had 'actual knowledge' of the
intermediary's connection to the FTO.' Appellees' Letter Br. at 14. *Kaplan* did not so hold; instead, it asserted 'the
actual knowledge component of the *Halberstam* standard requires that the defendant "know[ ]" that it is providing
"assistance," ... whether directly to the FTO or indirectly through an intermediary.' 999 F.3d at 863–64 (alteration in
original) (citation omitted)." 6 F.4th at 500 n.16.

*element* of an ATA claim,'" <u>not</u> a JASTA claim. 999 F.3d at 858 (quoting *Linde*, 882 F.3d at 327) (bold added here; italics added in *Kaplan*).[5]

*Kaplan* further explained that "whether a defendant bank's 'financial services to [an FTO or its affiliates should or] should not be viewed as routine' is a 'question[ ] of fact for a jury to decide.'" 999 F.3d at 858 (quoting *Linde*, 882 F.3d at 327). As shown below, the Circuit left open "whether the alleged aid (facilitating the transfer of millions of dollars to the Three Customers) would be important to the nature of the injury-causing act (Hamas's terrorist attacks)," *Honickman*, 6 F.4th at 500, which analysis would be unnecessary if "facilitating the transfer of millions of dollars to the Three Customers" were a form of "routine services" that is in some sense fatal to a JASTA claim. In sum, *knowingly* helping finance a terrorist organization is not permissible under JASTA just because the help was provided in a purportedly "routine" manner.

As to substantial assistance, the Second Circuit again held that this Court did not apply the correct standard:

> The district court appeared to impose a higher standard on the "*knowing*" prong of "knowingly and substantially" assisted than required, concluding that "Plaintiffs' complaint fails plausibly to allege that any assistance BLOM [Bank] provided--even if substantial--would have been knowing." *Honickman*, 432 F. Supp. 3d at 268. The "knowledge component" is satisfied "[i]f the defendant knowingly--and not innocently or inadvertently--gave assistance." *Kaplan*, 999 F.3d at 864. For instance, *Halberstam* held that "the district court ... justifiably inferred that Hamilton assisted Welch with knowledge that he had engaged in illegal acquisition of goods." 705 F.2d at 488. It did not require Hamilton to "know" anything more about Welch's unlawful activities than what she knew for the general awareness element.

*Id.* at 499-500.

The Second Circuit found that this Court misapplied three of the *Halberstam* factors:

---

[5]  A primary liability claim is where the defendant "itself committed an act of international terrorism." *Linde*, 882 F.3d at 331. Moreover, the "causation element" referenced in *Linde* refers to a primary liability claim, which "is *not* identical to the substantiality inquiry for aiding and abetting." *Id.* at 330-31 (emphasis added).

- "The district court misunderstood the first factor, 'the nature of the act encouraged,' to be a question of whether Plaintiffs plausibly alleged 'that BLOM [Bank] knowingly encouraged Hamas'[s] violent activities, such as those which caused Plaintiffs' injuries.'"

- "For the second factor, the 'amount of assistance,' the district court held 'Plaintiffs make no non-conclusory assertions that any of the funds processed by the Three Customers actually went to Hamas, or that BLOM [Bank], at the time it provided banking services to the Three Customers, was aware or intended that Hamas would receive the corresponding funds.' *Honickman*, 432 F. Supp. 3d at 268. However, Plaintiffs did not need to allege the funds 'actually went to Hamas.'"

- "[T]he fourth factor, the 'defendant's relation to the principal,' is useful for determining the defendant's capacity to assist. The district court erroneously construed this Court's finding in *Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217 (2d Cir. 2019), that 'the plaintiffs d[id] not plead any non-conclusory allegations that [the defendant-bank] had any relationship with [the FTO]' to mean that Plaintiffs must plead a direct relationship between BLOM Bank and Hamas."

*Id.* at 500-01.

## STANDARD OF REVIEW

Vacatur is permissible for "any other reason that justifies relief," Rule 60(b)(6) (i.e., other than those given in Rule 60(b)(1)-(5)), "if the movant can demonstrate extraordinary circumstances or extreme and undue hardship." *LeBlanc v. Cleveland*, 248 F.3d 95, 100 (2d Cir. 2001) (internal quotation marks and citation omitted). In finding a lower court's refusal to vacate its judgment and permit amendment an "abuse of discretion," the Circuit in *LeBlanc* explained that "[w]e have held that Rule 60(b)(6) 'should be liberally construed when substantial justice will thus be served.'" *Id.* (quoting *Radack v. Norwegian Am. Line Agency, Inc.*, 318 F.2d 538, 542 (2d Cir. 1963)).

## ARGUMENT

I. **This Court Should Vacate the Judgment in Order to Grant Leave to Amend Because Plaintiffs Did Not Have a Meaningful Opportunity to Do so Before.**

Generally speaking, leave to amend a complaint "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), and the Supreme Court has instructed (in the context of a post-

judgment motion to amend, no less) that "this mandate is to be heeded." *Foman*, 371 U.S. at 182. This Circuit is no different. *See, e.g.*, *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith."). And, indeed, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

Where dismissal was entered with prejudice, as here, plaintiffs may seek to amend their complaints post-judgment to address pleading deficiencies identified in the dismissal or other case law. However, "[a]s a procedural matter, '[a] party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant to [Rules] 59(e) or 60(b).'" *Williams*, 659 F.3d at 213 (quoting *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008)). And while the vacatur requirement means that "Rule 15's liberality must be tempered by considerations of finality," the Circuit in *Williams* found the lower court abused its discretion when it "applied a standard that overemphasized considerations of finality at the expense of the liberal amendment policy embodied in the Federal Rules of Civil Procedure." *Id.* at 210, 212-14.

Thus, the Second Circuit has repeatedly "stated that 'in view of the provision in rule 15(a) that leave [to amend] shall be freely given when justice so requires, it might be appropriate in a proper case to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment.'" *Id.* (quoting *Ruotolo*, 514 F.3d at 191) (some quotation marks omitted). *See also Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 92 (2d Cir. 2016) ("*SAIC*"). These cases make clear that a post-judgment amendment can meet the Rule 60(b) standard—and in several cases, the Circuit found the district court abused its discretion in not

providing that relief *for no reason other than that the plaintiffs sought to meet the deficiencies (correctly) identified in the judgment.*

Whether a post-judgment motion for leave to replead presents a proper case for vacatur depends on the circumstances of the case. The *Williams* court called the landmark decision *Foman v. Davis* "particularly instructive," *Williams*, 659 F.3d at 213, in which the Supreme Court reversed denial of a motion for post-judgment amendment, explaining:

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman*, 371 U.S. at 182 (citation omitted).

While, as shown below, pre-judgment failures to amend the complaint may be a relevant circumstance, the Second Circuit explained that *Foman* rejects the rule that plaintiffs must move to amend *pre*-judgment to preserve that right *post*-judgment:

> *Foman* makes unmistakably clear there is no such rule. The plaintiff in *Foman* did not seek leave to replead either together with her response to the motion to dismiss, or indeed prior to the district court's entry of judgment. The motion was made postjudgment. Nonetheless, the Supreme Court, identifying "undue delay" as an appropriate reason that might be given for denial of such a motion, ruled that the district court abused its discretion and violated the liberal spirit of Rule 15 by denying the motion. The *Foman* holding cannot be reconciled with the proposition that the liberal spirit of Rule 15 necessarily dissolves as soon as final judgment is entered.

*Williams*, 659 F.3d at 214. Thus, the *Williams* court reversed the denial of vacatur and amendment despite the fact that the plaintiff never previously sought to amend the relevant claims, just as in

*Foman*. These cases were predicated simply on presenting additional facts—the plaintiffs did not *also* rely on any clarification in binding law as a further ground for amendment.

As the Circuit has also explained, concerns for finality mean that a motion to replead is not *automatic* grounds for vacating a judgment, as repeated refusals to amend the complaint in ways that *could have cured the complaint's deficiencies* weighs against that liberal standard:

> [T]he plaintiffs had three opportunities to state a claim and had requested a fourth in their opposition to the defendants' motion to dismiss before the district court granted the defendants' motion with prejudice and denied the plaintiffs' request. In dismissing the First Amended Complaint, the district court issued a thorough opinion that identified defects that a second amended complaint should cure. *Even with the benefit of that opinion*, however, the plaintiffs failed to cure such deficiencies in their Second Amended Complaint.

*Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 145 (2d Cir. 2020) (emphasis added). Another court denied vacatur where the proposed amendment sought to "add an entirely new entity" as a defendant and "moved late in the proceedings—after the conclusion of discovery and summary judgment motion practice," which "in no way promotes judicial economy." *Abate v. Fifth Third Bank*, No. 13-cv-9078 (VSB), 2019 WL 2409792, at *3, 4 (S.D.N.Y. June 6, 2019).

Unlike *Metzler*, the Court's opinion here did not identify all the "defects" in the complaint prior to dismissal of Plaintiffs' claims (or, as in *Abate*, did not give Plaintiffs notice of the "specific contours" of those defects, *id.*, at *4). On the contrary, the Court's opinion would have (unintentionally) led Plaintiffs in the wrong direction. For example, the amendment Plaintiffs now propose would add numerous additional allegations, but *none of them* would purport to show, at the pleading stage, what BLOM's employees read, or which notice events they had actual knowledge of—as required by the Court's decision dismissing the complaint.

Although the Court gave Plaintiffs the opportunity to amend prior to dismissal (in fact, prior to briefing) "to add additional information in response to the arguments raised by Defendant,"

May 15, 2019, Minute Order, the "arguments raised by Defendant" (or the Court) do not reflect the actual pleading standard for JASTA. *See also* May 15, 2019, Tr. at 5:25-6:3 (asking if Plaintiffs wanted "to factually support some of the claims that [BLOM] identified as being deficient regarding the standards that were adopted by the Second Circuit from the D.C. Circuit").

Although declining to amend to meet an incorrect standard is *not* a necessary showing for vacatur under *Williams* or *Foman*, the futility of prior amendment in this case is further evident from the other errors in Court's dismissal decision, which noted that Plaintiffs had "not identified any additional facts they could allege which would address the deficiencies in their complaint," *Honickman*, 432 F. Supp. 3d at 270-71. But nearly all these "deficiencies" were rejected by the Second Circuit—the only exception is this Court's finding that articles Plaintiffs cited were either undated or post-dated the attacks at issue, which finding the Circuit also noted. 6 F.4th at 501. Had Defendant opposed or this Court had dismissed the complaint *solely* on the narrow defects in inferring scienter that were actually identified by the Circuit, such as, for example, failing to plead that certain Israeli designations were publicized in the international media, Plaintiffs would have erred in appealing rather than attempting to correct that pleading deficiency through amendment. But given the sweeping errors in Defendant's arguments and the dismissal decision, this motion presents the first opportunity Plaintiffs have to *meaningfully* amend their complaint, and the most liberal standard permissible in this procedural context should be applied to it.

### A.    BLOM's Purported Distinctions Are Specious.

BLOM only distinguished these cases by arguing that the plaintiffs in cases like *Williams* and *Foman* moved for post-judgment amendment rather than appealing. Def. August 12, 2021, Ltr. at 2. But, of course (and as discussed further below), those plaintiffs sought to meet the (generally correct) pleading standards set forth in the district court's dismissal opinions (the Circuit in *SAIC* identified errors in the district court's analysis that *also* made denial of vacatur an abuse

18

of discretion, *see* 818 F.3d at 93). In this case, Plaintiffs could not meet those standards (and should not have to) and were thus *compelled* to appeal.

BLOM instead argues that "changes in the law are routine events that do not open the door to vacatur of valid judgments," Def. August 12, 2021, Ltr. at 2, even though the Second Circuit's clarification of JASTA's pleading standards provide *another* reason for vacatur not even present in *Williams*, *Foman*, and the other cases discussed above. But BLOM is incorrect. First, it has omitted an important part of the principle: "However, where a 'supervening change in governing law calls into serious question the correctness of the court's judgment,' a Rule 60(b)(6) motion may be granted." *Scott v. Gardner*, 344 F. Supp. 2d 421, 426 (S.D.N.Y. 2004) (quoting *Sargent v. Columbia Forest Prod., Inc.*, 75 F.3d 86, 90 (2d Cir. 1996)). This clearly happened here; BLOM's assertion that changes in the law do not "open the door to vacatur" is obviously inapposite where the purported change in law *comes in an appeal of the judgment **in the same case.***

This is clear in the cases BLOM cites in its pre-motion letter opposing amendment. None involved a change in law precipitated by an appellate decision in the *same case*. In one, *United States v. Bank of New York,* 14 F.3d 756, 759 (2d Cir. 1994), the district court *did* vacate defendant's conviction, but declined to vacate a consent decree made pursuant to a settlement agreement. The Second Circuit affirmed, holding that "[w]hen a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect." *Id*. Two others, *Travelers Indem. Co. v. Sarkisian*, 794 F.2d 754, 757 (2d Cir. 1986) and *Simone v. Prudential Ins. Co. of Am.*, 164 F. App'x 39, 40 (2d Cir. 2006), rely on the third, *Ackermann v. United States*, 340 U.S. 193, 198 (1950), where the moving party failed to file a timely appeal of a dismissal. Choosing not to amend pursuant to Rule 15 to meet

erroneous pleading standards is not analogous to either negotiated settlements or choosing *not* to appeal an erroneous decision.

Nor did the law completely "change" here—it was clarified to make clear the District Court misinterpreted existing law. As set forth above, the Circuit explained that this Court's "conclusion contravenes both *Halberstam* and *Linde* ..., one of the first cases in which we interpreted aiding-and-abetting liability under JASTA." 6 F.4th at 497. Nor did the Circuit's decision vacating *Kaplan* purport to change the pleading standards, as the Circuit "acknowledge[d] that [this Court's *Honickman*] decision came before our opinion in *Kaplan* clarified the import of our earlier JASTA aiding-and-abetting precedents which may have generated some ambiguity as to the proper standard." *Id.* at 497 n.11. It would be eminently unfair to penalize Plaintiffs for not meeting pleading standards that involved "some ambiguity" and that this Court itself misinterpreted. Indeed, the Circuit's distinction between "publicly available evidence" and "public sources" on which Plaintiffs erred does not cite to any preexisting law Plaintiffs should have known.

**B.   The Court's Prior Invitations to Amend Do Not Constitute Grounds for Denying Plaintiffs' Motion to Amend.**

During the pre-motion conference, the Court's chief concern with Plaintiffs' proposed motion to amend is that Plaintiffs had declined two invitations from the Court to amend the complaint. However, as suggested in *Metzler*, an invitation to amend is only effective if it identifies *actual* deficiencies in a complaint that a plaintiff can correct. Thus, the Court's two invitations to amend were not effective—in fact, the Second Circuit has specifically stated that invitations to amend at the "pre-motion conference" stage are generally not effective, and often a motion to amend is only effective with "the benefit of a ruling":

> Here, the procedure by which the district court denied leave to amend was improper. The court required the parties to attend a pre-motion conference and to exchange, in preparation, letters of no more than three pages regarding Defendants' anticipated motion to dismiss for failure to state a claim. The Federal Rules of Civil

Procedure do not speak to the use of pre-motion conferences. Such conferences are not in themselves problematic, however, and indeed may in many instances efficiently narrow and/or resolve open issues, obviating the need for litigants to incur the cost of more extensive filings. *The impropriety occurred not when the district court held the pre-motion conference but when, in the course of the conference, it presented Plaintiffs with a Hobson's choice: agree to cure deficiencies not yet fully briefed and decided or forfeit the opportunity to replead. Without the benefit of a ruling*, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies.

*Loreley*, 797 F.3d at 190 (emphases added). The "improper procedure" identified in *Loreley* is precisely what BLOM encouraged this Court to implement at oral argument: "Because the plaintiffs expressly declined the opportunity to amend their complaint after receiving our premotion conference letter, we respectfully request that the complaint be dismissed with prejudice." Nov. 25, 2019, Tr. at 12:8-11.

Here, the "impropriety" is particularly stark because BLOM's pre-motion conference letter was premised entirely on incorrect constructions of controlling law, making the opportunity to amend particularly illusory. *Plaintiffs could not meet these erroneous standards by amendment.* BLOM's counsel now argues that it never alleged "in our premotion conference letter that there had to be signs of knowledge from BLOM employees in order to state a claim," Oct. 6, 2021, Tr. at 12:3-5, suggesting that requiring such allegations was an error the Court made on its own. But once the *Kaplan* lower court decision was issued (after briefing of the motion to dismiss was completed), BLOM's counsel at oral argument expressly encouraged the Court to reject the "level of knowledge that Judge Daniels rejected in *Kaplan*," premised on "notorious" links between customers and the FTO, as "there's no *direct* allegation of why BLOM would have known" about those links. Nov. 25, 2019, Tr. at 31:24-32:9 (emphasis added).

The Court's second invitation to amend came during that same oral argument on BLOM's motion to dismiss—again, before Plaintiffs had "the benefit of a ruling." *Loreley*, 797 F.3d at 190.

While "some decisions … suggest that … a fully briefed motion to dismiss can to some extent put a plaintiff on notice of deficiencies in the complaint," *Obra Pia Ltd. v. Seagrape Invs. LLC*, No. 19-cv-7840-RA, 2021 WL 1978545, at \*7 (S.D.N.Y. May 18, 2021), that (heavily qualified) principle is obviously only true where the defendant's briefs ***correctly state the law*** such that they "formed the basis of the Court's decision on the motion to dismiss" *on the correct legal grounds*, *id.* As set forth above, during oral argument BLOM's counsel strenuously urged the Court to adopt the erroneous pleading standards the *Kaplan* lower court decision imposed—standards Plaintiffs could not meet in an amendment.

In deciding that Plaintiffs' decision not to accept either invitation to amend the complaint justified dismissal with prejudice, this Court relied on two Circuit summary orders to support its contrary rule, but the Circuit did not find in either case that the district court applied the wrong pleading standards. *Rosner v. Star Gas Partners, L.P.*, 344 F. App'x 642, 644-45 (2d Cir. 2009); *Berman v. Morgan Keegan & Co.*, 455 F. App'x 92, 94, 97 (2d Cir. 2012). Notably, this Court also relied on *Herman v. Town of Cortlandt, Inc.*, No. 18-cv-2440 (CS), 2019 WL 2327565, at \*7 (S.D.N.Y. May 30, 2019), where a district court initially denied leave to amend a second amended complaint because the plaintiffs did not amend after receiving the benefits of a pre-motion letter from the defendant and conference (the court also found the proposed amendment futile). While this (unpublished) lower court opinion cannot supersede *Loreley*, not only was the pre-motion letter in *Herman* directed at a *second amended* complaint, but the dismissal was itself vacated by the district court following a change of law. *See Herman v. Town of Cortlandt, Inc.*, No. 18-cv-2440 (CS), 2019 WL 9247129, at \*1 (S.D.N.Y. Dec. 27, 2019).

Instead, the Court need look no further than another district court that also incorrectly applied the *Kaplan* lower court decision to the claims of the same Plaintiffs as here, *Averbach for*

*Est. of Averbach v. Cairo Amman Bank*, No. 19-cv-4-GHW (S.D.N.Y.), on permitting amendment. In that case, the defendant also filed a pre-motion conference letter outlining its arguments (ECF No. 24) and the parties engaged in discussion with the Court on the proposed motion's merits (ECF Nos. 34, 38); but there, the magistrate judge *also* issued a report recommending dismissal (ECF No. 53), to which Plaintiffs objected under Rule 72(b) rather than seek amendment (ECF No. 58). The District Court adopted the report in its entirety, and *still* gave Plaintiffs leave to replead after dismissing those claims, explaining that "[w]hen a complaint is dismissed for failing to state a claim upon which relief can be granted under Rule 12(b)(6), it is 'the usual practice' to allow leave to replead." *Averbach*, 2020 WL 1130733, at *2 (S.D.N.Y. Mar. 9, 2020) (citing *Cortec Indus., Inc.*, 949 F.2d at 48 and *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990)). As here, Plaintiffs did not request leave to amend in *Averbach*, and *declined* an invitation to amend during the pre-motion conference. Amending *Averbach* before the Second Circuit acted would have been as pointless as doing so here would have been, where the court was applying the wrong legal standard. After Plaintiffs filed the amended complaint permitted post-dismissal, the *Averbach* court stayed the case pending the *Kaplan* and *Honickman* appeals; when those were decided the court gave the Plaintiffs the opportunity to amend *again* in order to ensure they had presented the best allegations to meet the clarified pleading standard. *See Averbach*, Aug. 3, 2021, Minute Orders. BLOM has provided no reason why the Court here should adopt a more punitive approach than did the *Averbach* court.

During the pre-motion conference on the instant motion, BLOM's counsel raised what it characterized as two additional opportunities to seek amendment Plaintiffs purportedly failed to act upon. First, BLOM argued that "[w]hat plaintiffs could have done after this Court issued its opinion was what the plaintiffs did in the other cases on which they rely, which is move to vacate

and to amend after the judgment was issued." Oct. 6, 2021, Tr. at 13:16-22. This is self-evidently preposterous—the plaintiffs in *Williams* and *Foman* sought to amend in order meet the standards *set forth in the dismissal decisions.* Here, Plaintiffs could not (and cannot) obtain pre-discovery "acts or statements" from BLOM employees affirming that they saw particular records. Instead, they would have had to seek post-judgment amendment upon an *erroneous* dismissal decision. And Plaintiffs *cannot* "move to vacate," as BLOM suggests, based on this Court's error before appealing: "The contention that the court's decision misapplied *Sandstrom* was inadequate, for a Rule 60(b)(6) motion may not be used as a substitute for appeal." *Matarese v. LeFevre*, 801 F.2d 98, 107 (2d Cir. 1986).

According to BLOM, Plaintiffs forfeited a final purported opportunity to seek amendment from the Second Circuit itself by "challeng[ing] the Court's decision not to permit amendment" or otherwise "in the course of their appeal." Oct. 6, 2021, Tr. at 13:20-14:6. Of course, Plaintiffs did not challenge the Court's decision not to permit amendment because Plaintiffs were not seeking the opportunity to meet an erroneous standard via amendment. And there is *no* procedural requirement for requesting leave to amend from the Second Circuit.[6] The question before the Circuit was whether this Court applied the right standard, which Plaintiffs obviously believed they had met, not whether it should have permitted amendment. For example, in one case, the Supreme Court declined a request for leave to amend because its role in the case "was limited to the question" of the applicable standards, whereas amendment questions "are for the District Court to decide in the first instance"—and "were *not* addressed by the Court of Appeals in the decision

---

[6]   BLOM's cited case for this proposition, *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 89-90 (2d Cir. 2018), did not *require* a request to the Circuit for leave to amend, and noted that, given the defendant's and court's misstatements of the law, the plaintiff did not seek leave sooner because it "had no reason to seek leave to amend in response to Defendants' motion to dismiss." Because BLOM advocated for incorrect pleading standards, which the Court adopted, the same is true here.

below." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 455, 457 (2009) (emphasis added). The Court held that "[i]t is for the District Court on remand to consider … whether plaintiffs should be given leave to amend their complaint … and such other matters properly before it." *Id.* at 456.

As is clear from *Pac. Bell*, had Plaintiffs here sought leave to amend on appeal, the Circuit presumably would have likewise held that it was a matter for this Court to decide. The Second Circuit took that position after the Supreme Court remanded the question of amendment to it in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). There, the Supreme Court found that the complaint failed to meet the intervening change in pleading requirements delineated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (just as *Kaplan* clarified the pleading standard after this Court dismissed Plaintiffs' complaint). And although none of the decisions below mentioned a request for leave to amend, the Supreme Court instructed the Second Circuit to "decide in the first instance whether to remand to the District Court so that respondent can seek leave to amend his deficient complaint." *Id.* at 687. The Second Circuit held that "[i]n the ordinary course, we are accustomed to reviewing a district court's decision whether to grant or deny leave to amend, *rather than making that decision for ourselves* in the first instance, and we apply a deferential, 'abuse of discretion' standard of review to the district court's informed discretion." *Iqbal v. Ashcroft*, 574 F.3d 820, 822 (2d Cir. 2009) (emphasis added).

## II.   Plaintiffs Should Be Given the Opportunity to Meet the "Correct Standard."

### A.   None of the *Foman* Grounds for Denying a Motion to Amend Apply to Plaintiffs' Motion to Amend.

This Court should vacate the judgment and give Plaintiffs the opportunity to amend their complaint because they can now meet the "correct standard" set forth by the Second Circuit in *Honickman* and *Kaplan*. None of the grounds for rejecting amendment listed by the Supreme Court

in *Foman*—"undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," 371 U.S. at 182—apply here.

***First***, Plaintiffs did not exhibit undue delay, nor is "[m]ere delay … absent a showing of bad faith or undue prejudice" a basis "to deny the right to amend." *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) ("*Fluor*"). Plaintiffs filed their pre-motion conference letter within days of the Second Circuit clarifying the standard for pleading JASTA claims in this case.

***Second***, Plaintiffs have not exhibited bad faith or dilatory motive, having repeatedly stated their view of the pleading standard and elements of a JASTA aiding and abetting claim.

***Third***, Plaintiffs have not exhibited a "repeated failure to cure deficiencies by amendments previously allowed," for the reasons given above.

***Fourth***, the proposed amendment does not unduly prejudice BLOM. This factor ensures fairness to the defendant, an issue raised by the Court during the pre-motion conference on this motion in discussing the Court's two prior invitations to amend discussed above. But what the Court characterized as "fairness to the defendant," Oct. 6, 2021, Tr. at 10:13-16, is ultimately just BLOM's right to (1) insist on the wrong pleading standards again and again to this Court and the Circuit, as the Second Circuit repeatedly pointed out, *see, e.g.*, *Honickman* at 490, 499 n.15, 500 n.16; (2) ask this Court to dismiss the complaint "with prejudice" because "plaintiffs expressly declined the opportunity to amend their complaint after receiving our premotion conference letter," despite the Second Circuit forcefully rejecting that rule in *Loreley*; and (3) avoid the prospect of facing a complaint drafted to meet the since-clarified pleading standard for JASTA.

In reality, the Second Circuit has clearly defined "undue prejudice" to a defendant (which is the "perhaps most important" reason to consider denying leave to amend, *Fluor*, 654 F.2d at 856), *and it looks nothing like Defendant's situation here*. Factors indicating undue prejudice to a defendant include whether an amendment would require significant additional discovery and trial preparation *beyond that already expended*, such that "[u]ndue prejudice arises when an 'amendment [comes] on the eve of trial and would result in new problems of proof.'" *Ruotolo*, 514 F.3d at 192 (quoting *Fluor*, 654 F.2d at 856)). In *Ruotolo*, the Circuit affirmed denial of leave to amend because the plaintiff sought to amend post-judgment to add facts that were in his possession on initial pleading—but the court faulted plaintiff *not* for failing to allege facts already in its possession, but for doing so after the parties "concluded extensive discovery" and "litigated numerous discovery and trial-related motions," and were on the eve of trial. In *Fluor*, conversely, the Circuit reversed a denial of leave to amend where "no trial date had been set by the court and no motion for summary judgment had yet been filed by the defendants" and where "the amendment will not involve a great deal of *additional* discovery." *Id.* (quoting *Fluor*, 654 F.2d at 856) (emphasis added).[7]

Here, the parties have not engaged in *any* discovery or any other burdensome litigation efforts aside from BLOM moving to dismiss and defending the appeal (on entirely erroneous legal grounds). *See Brennan v. City of White Plains*, No. 97-cv-2709 (RWS), 1998 WL 75692, at *10 (S.D.N.Y. Feb. 18, 1998) ("Amendment at this early stage, prior to any discovery, *cannot*

---

[7]     Given the Federal Rules of Civil Procedure's strong interest in "facilitat[ing] the decision of cases on their merits," *St. Paul Fire & Marine Ins. Co. v. Heath Fielding Ins. Broking Ltd.*, No. 91-cv-0748, 1996 WL 19028, at *6 (S.D.N.Y. Jan. 17, 1996), under these circumstances, leave to amend would be warranted even if the proceedings were substantially more advanced. *See, e.g.*, *Valjean Mfg. Inc. v. Michael Werdiger Inc.*, No. 03-cv-6185 (HB), 2004 WL 876056, at *1 (S.D.N.Y. Apr. 21, 2004) (granting leave to amend where discovery had closed); *Schonfeld v. Hilliard*, No. 95-cv-3052 (MBM), 1997 WL 171372, at *2-4 (S.D.N.Y. Apr. 10, 1997) (granting plaintiff leave to file amended complaint adding fraud claim after close of discovery, and rejecting the defendants' argument that amendment was inappropriate because the plaintiff attempted to change the theory and nature of the case).

constitute undue delay or prejudice the Defendants.") (emphasis added). *See also Block*, 988 F.2d at 350-51; *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 756 F.2d 230, 236 (2d Cir. 1985) (reversing summary judgment for defendants and directing district court to permit filing of amended complaint based on newly-discovered facts). In fact, the only way BLOM will be impacted by the filing of an amended complaint is that BLOM will be required to contest an even more detailed pleading record under the Second Circuit's articulated legal standard and in response to very specific factual deficiencies identified by that court.[8]

Here, denying Plaintiffs' motion for vacatur would signify the opposite—that even if Plaintiffs can plausibly plead that BLOM aided and abetted the Hamas terrorist attacks that injured them and killed their family members, justice requires that BLOM be *rewarded* for successfully arguing to this Court for adoption of both an erroneous pleading standard and an erroneous substantive legal standard for JASTA that Plaintiffs could never meet.

**B.    Plaintiffs' Pleading Deficiencies Were Reasonably Made and Readily Corrected.**

The deficiencies in the complaint that the Second Circuit did identify reflect granular defects readily corrected in an amendment. During the pre-motion conference, the Court asked: "If the standard wasn't clear and you were advocating for a particular standard, why wouldn't you allege facts that met the standard that you thought was the right standard?" Oct. 6, 2021, Tr. at 4:23-5:1. But clearly Plaintiffs understood the requirements for pleading knowledge slightly differently than did the Circuit. *See, e.g.*, *Honickman*, 6 F.4th at 502 n.18 (distinguishing "'publicly available' evidence" from "public sources"). But these narrow factual issues identified in the

---

[8]      BLOM has also stated that "we are not at all concerned by the allegations raised in the proposed amended complaint. We think that they are futile, that there are essentially no new allegations about two of the alleged customers, Sanibel and Subul al-Khair. Essentially, plaintiffs have added a bunch of pejorative adjectives to describe the cash withdrawals that were already alleged at length in the dismissed complaint." October 6, 2021, Tr. at 17:3-10. While the futility of an amended complaint is not before the Court on this motion, BLOM's stated lack of concern only reinforces the absence of any prejudice and the appropriateness of this case being decided on the merits.

Second Circuit's decision as deficient were far from self-evident at the pleading stage and were only further obscured by the confusion surrounding the applicable legal standard.

For example, the Circuit discounted Plaintiffs' allegation that Israel designated Al-Aqsa as a terrorist organization in 1998, because the complaint did not specify "whether and where this was made public" or why, "[w]ithout any further allegations, a defendant-bank's transfers of funds from *non-customers* associated with an FTO to the defendant's customers" would compel an inference that a defendant knew of its customers' connections to that FTO. *Id.* at 502 n.20. The Circuit also faulted Plaintiffs for "characteriz[ing] BLOM Bank's transactions for the Three Customers as 'untraceable' for the first time in their post-argument letter brief." *Id.* at 502 n.19 (however, Plaintiffs emphasized these large cash withdrawals repeatedly in their brief opposing BLOM's motion to dismiss, *see* ECF No. 37 at 6, 19, 21, 22, 23, 24, and their opening brief on appeal, No. 20-575, ECF No. 52 at 34, 36 (calling the regular withdrawal of "large amounts of money in cash[] a highly unusual and suspicious behavior for a conventional charity").

While these criticisms of the complaint's allegations would be squarely addressed in the proposed amended complaint, they are far from obvious. Indeed, courts reviewing Anti-Terrorism Act claims have previously credited Israeli designations as one type of data that could be considered in assessing allegations of a defendant's knowledge of its customers' connections to terrorism. *See Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609, 627 (E.D.N.Y. 2006) (noting that "defendant argues that it had no obligation to consult Israeli lists of terrorists" but nevertheless finding that the bank's policies and Financial Action Task Force (FATF) guidelines "require that [defendant] monitor publicly available information and allegations about the organizations from which its customers receive funds, and to which its customers transfer funds"). *See also Strauss v. Crédit Lyonnais, S.A.*, No. 06-cv-0702 (CPS), 2006 WL 2862704, at *14

(E.D.N.Y. Oct. 5, 2006) ("Defendant contends that there is no evidence that it knew of these Israeli designations. Plaintiffs argue convincingly however, that drawing all inferences from the factual allegations of the complaint and the document attached to it in their favor, it is reasonable to believe that when the bank noticed 'unusual activity' on CBSP's accounts in 2000, in the form of large transfers of money to the West Bank and Gaza strip during a highly publicized Intifada, the bank would have investigated the organizations receiving the large transfers, including designations of terrorist organizations made by the government whose country was experiencing the terrorism.").

As for the fact that the uses for cash withdrawals are untraceable, Plaintiffs reasonably believed it is an inherent quality that cash—i.e., banknotes like dollar bills—is untraceable, unlike, for example, a check, which lists the recipient and the amount paid.[9]

The point is not that Plaintiffs' allegations were sufficient—the Second Circuit has held otherwise—but that Plaintiffs were not derelict in standing on their initial complaint. The question of whether a defendant's material support to an FTO suffices to establish general awareness is "a fact-intensive inquiry" *Kaplan*, 999 F.3d at 860-61. That is precisely the kind of pleading issue that courts favor providing opportunities to amend to resolve.

## CONCLUSION

Requiring more clairvoyance from Plaintiffs than the District Court itself possessed about what was required to plead "general awareness" in this case does not accord with the spirit of either Rule 60 or Rule 15. Therefore, for all of the reasons set forth above, vacatur of the judgment (and, ultimately, leave to amend) should be granted.

---

[9]     *See, e.g.*, FATF Report, "Money Laundering Through the Physical Transportation of Cash," at 37 (Oct. 2015) ("Cash may be exported because it is needed somewhere else, perhaps to pay for further consignments of illicit goods. It may also be for some other reason, such as the desire to purchase an asset, or simply to ensure that anyone investigating the criminal's activities is unable to trace, and therefore confiscate, his ill-gotten gains."), *available at* https://www.fatf-gafi.org/media/fatf/documents/reports/money-laundering-through-transportation-cash.pdf.

Dated: November 12, 2021
      Hackensack, NJ

                    Respectfully submitted,

                    By:     /s/ Michael J. Radine

**OSEN LLC**
Michael J. Radine, Esq.
Gary M. Osen, Esq.
Ari Ungar, Esq.
Dina Gielchinsky, Esq.
190 Moore St., Suite 272
Hackensack, NJ 07601
Telephone (201) 265-6400

**ZUCKERMAN SPAEDER LLP**
Shawn P. Naunton, Esq.
485 Madison Avenue, 10th Floor
New York, NY 10022
Telephone (646) 746-8655

**TURNER & ASSOCIATES, P.A.**
C. Tab Turner, Esq.
4705 Somers Avenue, Suite 100
North Little Rock, AR 72116
Telephone (501) 791-2277

**KOHN, SWIFT & GRAF, P.C.**
Steven M. Steingard, Esq.
Stephen H. Schwartz, Esq.
Neil L. Glazer, Esq.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone (215) 238-1700

*Attorneys for Plaintiffs*