UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

MICHAL HONICKMAN FOR THE ESTATE OF   :
HOWARD GOLDSTEIN, *et al.*,                       :
                                                              :
                        Plaintiffs,           :          No. 19-cv-0008-KAM-SMG
                                                              :
         -against-                                    :
                                                              :
BLOM BANK SAL,                                   :
                                                              :
                        Defendant.          :
---------------------------------------------------------------x


**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
<u>TO VACATE THE JUDGMENT</u>**

# **TABLE OF CONTENTS**

I.     BLOM'S OPENING BRIEF IGNORES THE RELEVANT CASE LAW .......................... 3

II.    BLOM'S OPPOSITION BRIEF CONFIRMS THAT PLAINTIFFS HAD NO MEANINGFUL OPPORTUNITIES TO AMEND ........................................................ 6

    A.    Pre-motion Conference ..................................................................................... 6

    B.    Motion to Dismiss ............................................................................................ 7

    C.    Appeal .............................................................................................................. 9

CONCLUSION ................................................................................................................ 10

## TABLE OF AUTHORITIES

**Cases**

*Ackermann v. United States*,
    340 U.S. 193 (1950) ........................................................................................... 5

*Choice Hotels Int'l, Inc. v. Grover*,
    792 F.3d 753 (7th Cir. 2015) ............................................................................ 5

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991) ............................................................................... 9

*Foman v. Davis*,
    371 U.S. 178 (1962) .................................................................................. 3, 4, 6

*Honickman for Est. of Goldstein v. BLOM Bank SAL*,
    432 F. Supp. 3d 253 (E.D.N.Y. 2020) ............................................................ 1

*Honickman v. BLOM Bank SAL*,
    6 F.4th 487 (2d Cir. 2021) ........................................................................ 1, 2, 3

*In re Zimmerman*,
    869 F.2d 1126 (8th Cir. 1989) .......................................................................... 5

*Indiana Pub. Ret. Sys. v. SAIC, Inc.*,
    818 F.3d 85 (2d Cir. 2016) .............................................................................. 3

*Kaplan v. Lebanese Canadian Bank, SAL*,
    405 F. Supp. 3d 525 (S.D.N.Y. 2019) ...................................................... 1, 7, 8

*Kaplan v. Lebanese Canadian Bank, SAL*,
    999 F.3d 842 (2d Cir. 2021) ....................................................................... 9, 10

*LeBlanc v. Cleveland*,
    198 F.3d 353 (2d Cir. 1999) ............................................................................ 4

*LeBlanc v. Cleveland*,
    248 F.3d 95 (2d Cir. 2001) ......................................................................... 4, 5, 9

*Link v. Wabash R. Co.*,
    370 U.S. 626 (1962) ......................................................................................... 5

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015) .................................................................... *passim*

ii

*Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*,
    970 F.3d 133 (2d Cir. 2020)........................................................................... 3, 8

*Mitchell v. Hobbs*,
    951 F.2d 417 (1st Cir. 1991)............................................................................ 5

*Simone v. Prudential Ins. Co. of Am.*,
    164 F. App'x 39 (2d Cir. 2006) ...................................................................... 5

*Williams v. Citigroup Inc.*,
    659 F.3d 208 (2d Cir. 2011)...................................................................... 3, 4, 6

**Rules**

Fed. R. Civ. P. 15(a) ...................................................................................... 3, 6, 8

Fed. R. Civ. P. 60.........................................................................................3, 4, 5, 6

BLOM urges this Court to deny Plaintiffs' motion for vacatur in order to prevent the injustice of having this case decided on its merits and "because Plaintiffs have asserted a dozen lawsuits against other defendants seeking to recover damages for the very same injuries alleged in this case." Br. at 17. Why, it asks, should it have to defend a case now where Plaintiffs can plausibly allege it aided and abetted a dozen brutal terrorist attacks when it already convinced this Court of a suite of wrong legal standards?

According to BLOM, such an outcome "would open the door to other such requests whenever an appellate court affirms the dismissal of a complaint on some, but not all, of the grounds addressed in a district court's decision." *Id.* at 18. "*Some, but not all,*" is an exceedingly delicate way of saying the Circuit rejected nearly every argument BLOM made, as shown in Plaintiffs' prior brief. Pls. Br. at 10-14; *Honickman v. BLOM Bank SAL*, 6 F.4th 487 (2d Cir. 2021). The "some" refers to one deficiency, among a small handful identified by the Circuit, that was raised by BLOM and the Court: that some of the media sources supporting the inference that BLOM knew its "Three Customers" were linked to Hamas were undated or post-dated the attacks.[1]

The Circuit's decision almost uniformly rejected BLOM's other arguments and assertions, and where it found fault with the complaint's allegations, it did so for granular reasons not otherwise raised by this Court. Yet, BLOM now claims that the *focus* of both the Circuit's and this Court's decision was the complaint's media articles that were undated or post-dated the attacks. In reality, this was one of many arguments BLOM made (most of which were erroneous), and a single

---

[1]     While BLOM sees *implicit* agreement on allegations as to "transfers *to* the alleged customers," Br. at 4-5, the Circuit rejected those allegations for *curable* reasons, such as by alleging that Israeli or German designations were publicized in the media—not that BLOM "knew or should have known" of those media or "maintain[ed] an office" in those countries, as this Court required. 432 F. Supp. 3d 253, 259 n.5, 265 (E.D.N.Y. 2020). The Circuit also noted "further allegations" could potentially suffice, 6 F.4th at 502 n.20 (e.g., alleging due diligence procedures—rejected in *Kaplan I* in a passage quoted by this Court). Only lacking those allegations did the Circuit "agree" with this Court "that a *single* post-designation transfer, standing alone, is insufficient to suggest" awareness of Sanabil's Hamas links, *id.* at 502 (emphasis added)—but, again, *not* for the reasons given by this Court, 432 F. Supp. 3d at 267 n.11.

observation this Court made on knowledge—after holding that the Plaintiffs could not rely on *any* media articles absent plausible allegations that BLOM employees had read them.

Plaintiffs, of course, alleged *pre*-attack sources of knowledge, such as Hamas operating openly in Lebanon for years prior to the relevant period, the Three Customers' overlap with Hamas leadership *during the relevant period*, the Union of Good chair's infamous support for suicide attacks, the Three Customers' operations in Palestinian refugee camps dominated by Foreign Terrorist Organizations including Hamas and Hezbollah, Sanabil's and Subul al-Khair's highly unusual cash withdrawals, and the *pre-attack* U.S. and Israeli designations of entities from which BLOM transferred *millions of dollars* into its customers' accounts (and Union of Good itself). The Circuit acknowledged the probative value of many of these allegations but ultimately found that they were cumulatively insufficient for reasons not raised by this Court. For example, the Circuit noted that Plaintiffs did not specify "whether and where" Israeli designations were "made public" or the basis for the Union of Good designation and found allegations relating to cash withdrawals insufficient to draw an inference that such activity was untraceable where that lack of traceability was not explicitly alleged in the complaint. 6 F.4th at 492 n.6, 502-03 nn.19-20.

The Circuit's reference to "undated" or post-attack events constitutes *half a paragraph* in the decision. *Id.* at 501-02 (otherwise noting that charities act under "cover"). Because BLOM has, from the inception of this case, consistently urged this Court to adopt a long list of erroneous legal standards, it is now left treating this single passage in the Circuit's decision as if it were in fact the central premise of all prior proceedings *and* the Circuit decision. BLOM calls it the "*fundamental* problem with [Plaintiffs'] theory," this Court's "core holding on the subject," and "*a* key deficiency." Br. at 3, 4, 9. *See also id.* at 9 (claiming this Court "identified multiple defects in the Complaint's allegations," but omitting that those "defects" were rejected by the Circuit).

In profound understatement, BLOM calls the *pages* of erroneous standards it urged this Court to adopt merely "*other* alternative grounds for this Court's analysis, which the Second Circuit declined to adopt" or which were "not endorsed." *Id.* at 3, 18. According to BLOM, Plaintiffs only raise these "*other* aspects" of the Court's opinion, which were only "*purportedly* incorrect," as a "diversion." *Id.* In reality, almost the entire 16-page Circuit opinion is dedicated to rejecting these arguments, whereas its substantive analysis of deficiencies in Plaintiffs' allegations constitutes three paragraphs near the end of the opinion. 6 F.4th at 501-02. These rejected standards were not "alternative grounds" for dismissal, they were elements that "form the crux of most JASTA aiding-and-abetting cases." *Id.* at 496. Nor was the Circuit's findings as to general awareness—to put it mildly—"virtually identical" to those reached by this Court. Br. at 18.

## I.     BLOM'S OPENING BRIEF IGNORES THE RELEVANT CASE LAW

BLOM's opening brief conspicuously avoids any discussion of vacatur in the amendment context. With the single exception of *Metzler, none* of BLOM's vacatur cases analyzed post-judgment Rule 15(a) amendment and BLOM simply ignores the binding vacatur-and-amendment decisions like *Williams*, *Foman*, and *SAIC* that the parties discussed in their pre-motion conference letters and teleconference. Moreover, *Metzler* affirmed *Williams*, *SAIC*, and *Foman*, only distinguishing them on the grounds that the plaintiffs in that case repeatedly failed to state a claim in *three* prior opportunities "beyond the original complaint," "[e]ven with the benefit of" "a thorough opinion that identified defects that a second amended complaint should cure." *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 145, 147 (2d Cir. 2020).

Because BLOM could find no case contrary to *Foman* and its progeny, its opening brief relies entirely on a line of cases that suggests vacatur is not necessary where a party or its counsel made a poor "strategic choice"—generally by missing a binding deadline. BLOM predicates its argument on a line from a treatise, stating that a party seeking vacatur under Rule 60(b) "usually"

3

must be "completely without fault for his or her predicament" and "almost unable to have taken any steps that would have resulted in preventing the judgment from which relief is sought." Br. at 14 (quoting 12 Moore's Fed. Prac.-Civil § 60.48(3)(b) (2021)). Although Plaintiffs obviously did not miss a deadline in this case, BLOM argues that declining to amend (to meet the wrong legal standards—a challenge not faced in *Williams* or *Foman*) or ask the Circuit (to ask this Court) to consider amendment was a comparably inexcusable "strategic choice."

The Second Circuit disagrees. In *LeBlanc v. Cleveland*, 248 F.3d 95 (2d Cir. 2001), the Circuit reversed a denial of a motion to vacate and amend raised *after* dismissal was affirmed on a prior appeal. The district court dismissed the complaint for want of (admiralty) jurisdiction. The plaintiffs appealed, ***without requesting leave to amend from the district or circuit court***. *See id.* (referencing *LeBlanc v. Cleveland*, 198 F.3d 353 (2d Cir. 1999)). Only *after* the Circuit affirmed the dismissal, plaintiff LeBlanc moved to vacate the judgment and amend so as to remove a non-diverse plaintiff from the action and premise the case on diversity jurisdiction. The district court, "[c]haracterizing LeBlanc's decision to proceed in tandem with [the non-diverse plaintiff] under admiralty jurisdiction *as a deliberate choice*, … held that failure of a deliberate trial strategy did not warrant relief under Rule 60(b)(1) or 60(b)(6)." *Id.* at 98 (emphasis added).

The Circuit, however, held "that it was an abuse of discretion to deny LeBlanc's Rule 60(b) motion to vacate the judgment and to reinstate her complaint." *Id.* at 100. The Circuit explained that Rule 60(b)(6) "should be liberally construed when substantial justice will thus be served." *Id.* (internal quotation marks and citations omitted). The Circuit concluded that "[i]t was reasonable for LeBlanc to wait to drop her non-diverse co-plaintiff until the district court ruled that admiralty jurisdiction did not exist." *Id.* While "jurisdiction was unresolved, it was in the interest of judicial economy to proceed" with both plaintiffs, "and to eliminate a non-diverse party only if doing so

4

were essential to jurisdiction." *Id.*

Unlike *LeBlanc,* where the district court's admiralty analysis was entirely affirmed on appeal, Plaintiffs here declined to amend their complaint to meet (a host of) pleading standards which they reasonably believed were incorrectly recited by BLOM and adopted by this Court, until the core legal issues were clarified by the Circuit.[2] But *LeBlanc* makes clear that it is an abuse of discretion to deny a Rule 60(b) motion even given LeBlanc's *mistaken* but reasonable "deliberate choice" to bring an (ultimately faulty) admiralty case with a non-diverse co-plaintiff—vacatur is all the more appropriate here where Plaintiffs declined to amend to meet erroneous standards.

All of BLOM's "strategic choice" cases on the other hand, involve movants inexcusably missing strict deadlines. *See, e.g.*, *Ackermann v. United States*, 340 U.S. 193, 195 (1950) (failure to timely appeal); *Mitchell v. Hobbs*, 951 F.2d 417, 420 (1st Cir. 1991) (failure to timely appeal or raise defenses); *In re Zimmerman*, 869 F.2d 1126, 1127 (8th Cir. 1989) (failure to make "timely objections"); *Choice Hotels Int'l, Inc. v. Grover*, 792 F.3d 753 (7th Cir. 2015) (failure to answer the complaint or participate in subsequent stages); *Link v. Wabash R. Co.*, 370 U.S. 626, 628-29 (1962) (failure to appear at the pre-trial conference). In *Simone v. Prudential Ins. Co. of Am.*, 164 F. App'x 39, 40 (2d Cir. 2006), the Circuit held that vacatur was not appropriate even when another decision "cast doubt on the standard of review the district court had applied to plaintiff's claim" *because the plaintiff failed to appeal the dismissal*—precisely the opposite of what Plaintiffs did here. Br. at 16 (indeed, BLOM itself concedes that vacatur under Rule 60(b) cannot be "a substitute for appeals," *id.* at 14). According to BLOM, therefore, both *appealing* and *not appealing* an incorrect district court decision are equally fatal "strategic choices" a plaintiff must live with.

---

[2]     Indeed, BLOM concedes that "there was no determinative change in decisional law." Br. at 18. This Court simply misapplied existing law; the only question is whether Plaintiffs should be penalized for urging correct legal standards and BLOM should be rewarded for misdirecting the Court and continuing to misstate the record. Fairness and the case law both emphatically say no.

5

Here, Plaintiffs did not miss any deadline for a motion for vacatur under Rule 60(b), *see* Rule 60(c), or a motion to amend with "the court's leave," Rule 15(a)(2). In fact, Plaintiffs initiated this motion within days of the Second Circuit's issuance of a decision setting out the correct pleading standards. BLOM implicitly tries to fashion a constructive deadline by arguing that Plaintiffs made a "conscious decision to waive any right to an amendment" and that "was a strategic choice," Br. at 16, but does not suggest what constitutes "waiver" of a "right to an amendment"—the only waivable "right" to amend is the amendment as of right pursuant to Rule 15(a)(1), but "*Foman* makes unmistakably clear there is no such rule" that plaintiffs must move to amend pre-judgment *at all*. *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011). BLOM, quoting *Ackermann*, argues "there must be an end to litigation someday," Br. at 15, but the cases it cites were considerably more advanced—for instance, in *Ackermann*, plaintiffs sought vacatur *four years* after judgments were entered *following a trial*.

## II.    BLOM'S OPPOSITION BRIEF CONFIRMS THAT PLAINTIFFS HAD NO MEANINGFUL OPPORTUNITIES TO AMEND

BLOM argues that Plaintiffs missed several opportunities to amend which constitute some sort of implied waiver (although without legal basis). However, as Plaintiffs showed in their prior brief, each purported opportunity was illusory, and the Circuit has explained the "impropriety" of presenting plaintiffs with a "Hobson's choice" of amending prematurely. Pls. Br. at 20-25 (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)).

### A.    Pre-motion Conference

The Court made its first invitation to amend at the pre-motion conference, which, BLOM argues, presented Plaintiffs with a meaningful opportunity to amend because BLOM did not ask Plaintiffs to meet an impossible knowledge standard—that is, *until* the November 25, 2019, oral argument. Specifically, BLOM points out that its pre-motion conference letter "did not rely upon

6

the District Court opinion in *Kaplan I*, which had not yet been decided." Br. at 6.

BLOM appears to concede that its later reliance on *Kaplan I* constituted a fatal misdirection, stating: "*Importantly*, nothing in the May 2018 Pre-Motion Conference letters suggested that Plaintiffs were required to plead that BLOM actually read the public source information invoked as a basis for its alleged general awareness." *Id.* (emphasis added). That was "the later holding of this Court." *Id.* In other words, although this Circuit has held that requiring Plaintiffs to "agree to cure deficiencies not yet fully briefed and decided or forfeit the opportunity to replead" is improper, *Loreley*, 797 F.3d at 190, Plaintiffs should nevertheless have amended without the sufficiency of their allegations being "fully briefed and decided" because BLOM only persuaded this Court to apply the wrong pleading standard *after* the pre-motion conference.

In BLOM's telling, its pre-motion conference letter "focused on the *timing* of the alleged public source information and its probative value." Br. at 6. That is simply untrue—BLOM's three-page letter mentioned timing in a single passage:

> [T]he Complaint alleges nothing more than that BLOM provided routine banking services to organizations that *later were revealed* to be connected to Hamas. But none of the allegations, if true, would establish that BLOM was aware of that connection at the time it provided those banking services or, *more importantly*, that BLOM was aware that the banking services it provided to those customers were connected to alleged terrorist activities.

Ltr., ECF No. 20, at 2 (emphasis added). For BLOM, the "timing" element was not even the focus of that passage in the letter—the words "more importantly" signify that its (erroneous) assertion that its "banking services" had to be "connected" to terrorist activities was BLOM's key point. The rest of the letter endorsed a menagerie of erroneous arguments and it was largely *these* "arguments raised by Defendant" that this Court invited Plaintiffs to amend to meet. Br. at 7.

**B.    Motion to Dismiss**

The Court made its second invitation to amend at the oral argument on Defendant's motion

7

to dismiss. As with its mischaracterization of its pre-motion letter, BLOM argues that its brief in support of its motion to dismiss "focused on the dates of the Complaint's allegations regarding knowledge," rather than the other, many erroneous legal standards it urged. *Id.* That characterization is belied by even a cursory reading of the brief, which insisted on the erroneous standards urged in its pre-motion conference letter.

This was followed, at oral argument, by BLOM's counsel devoting a considerable portion of her presentation on the persuasive authority of *Kaplan I*, which she presented to the Court as new authority supporting dismissal. *See* Pls. Br. at 6-7. BLOM explicitly encouraged the Court to adopt the erroneous knowledge standard in that case, arguing that

> *the level of knowledge that Judge Daniels rejected in Kaplan was very much what's claimed here*, where it said that it was notorious that there were links between the accounts at issue there, between those persons and in that case, Hezbollah. And that's exactly what's said here. *It was apparently notorious that BLOM should have known that these accounts were linked to HAMAS, but there's no direct allegation of why BLOM should have known that.*

*Id.* The "level of knowledge … rejected in *Kaplan*" was of course found sufficient in *Kaplan II.*

BLOM thus pivots and argues that although *it* urged the Court to adopt *Kaplan I* at oral argument, "[*t*]*his Court* did not then indicate whether it would adopt any aspect of Judge Daniels' reasoning." Br. at 8 (emphasis added). It therefore follows, according to BLOM, that Plaintiffs should have sought leave to amend their complaint either because they could have divined the Second Circuit's reversal of *Kaplan I* or foreseen that this Court would reject the holdings in *Kaplan I.* Regardless, *Loreley* and *Metzler* make clear that, when there are any ambiguities in a court's view of defects in a complaint (factually or legally), amendment after a (correct) decision is issued is appropriate. *See* Pls. Br. at 17, 20-21.[3]

---

[3] BLOM concedes that "[t]his Court did … explain that the Second Circuit encourages amendment of complaints *before* motion practice," Br. at 8 (emphasis in original), whereas the opposite is true; in fact, plaintiffs have an *amendment as of right after the motion to dismiss is filed*, Rule 15(a)(1)(B), and amendments as of right are

C.      Appeal

BLOM argues that Plaintiffs should have appealed the Court's decision to dismiss with prejudice, Br. at 16, even though Plaintiffs could not allege a set of facts in an amended complaint to meet the Court's erroneous standards. This argument is disposed of in Plaintiffs' prior brief, Pls. Br. at 24-25, and there is no legal or procedural requirement to ask a circuit court for leave in the first instance to amend, *id.* This is clear from *LeBlanc*, where amendment was not raised on appeal. *See supra* at 4. Notably, BLOM has provided no cases suggesting otherwise.

BLOM also wrongly suggests that on appeal, Plaintiffs, against all reason, "again doubled down on arguing that their allegations of undated or *post hoc* publicly available information supported an inference of BLOM's general awareness." Br. at 11. That is, of course, incorrect, but in BLOM's telling, once the Circuit issued *Kaplan II* with purported "emphasis on the time period of the alleged public statements" in that case, Plaintiffs should have realized they were wrong to argue that they need "not allege contemporaneous publications linking BLOM's alleged customers to Hamas" and should have requested leave to amend in their post-argument letter brief. *Id.*

But, as Plaintiffs made clear in that letter brief, they have consistently focused on pre-attack indicators of knowledge (BLOM is forced to admit that Plaintiffs referenced pre-attack Israeli and U.S. designations, *id.* at 11). Plaintiffs showed, for example, that they alleged that "'Sanabil's board members *were* predominantly well-known HAMAS leaders *in Lebanon*,' meaning Hamas leaders known *during the relevant period* (Sanabil closed in 2003)," which "facts satisfy the 'general allegations' standard clarified in *Kaplan*, which relied, in part, on public associations

---

*not* disfavored in this or any circuit. As is clear from *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991), and *Loreley*, the Circuit in fact encourages amendment *after dismissal* (on correct grounds). *See* Pls. Br. at 15, 20-21.

between Hezbollah and LCB's customers." Pls. Post-Argument Brief, No. 20-575, at 11 (2d Cir. July 9, 2021), ECF No. 98 (citations omitted).[4] Plaintiffs then explained at length that

> [t]he allegations in *Kaplan* do not constitute the *minimum* required to plausibly plead JASTA aiding and abetting, and the cases are naturally not identical. For example, *Kaplan* involves certain allegations not present here, but that complaint also benefited from evidence collected by the United States in designating LCB a financial institution of primary money laundering concern and seizing some of its assets. JASTA claims are, of course, not limited to claims against the handful of banks the United States has designated.

*Id.* at 11-12. Plaintiffs then showed that they "have made allegations here *not* present in *Kaplan*," e.g., "BLOM provided substantial assistance to Hamas *after* a number of its fundraising entities were designated" by the U.S., Israel, and Germany, before or during the relevant period. *Id.* at 12.

The point is not that Plaintiffs' scienter allegations here were as compelling as the those in *Kaplan* (where the bank itself was eventually designated) or that they were ultimately sufficient— the Circuit held otherwise. But Plaintiffs did not insist on, and the Circuit did not focus on, post hoc allegations. In fact, the Circuit identified several easily reparable deficiencies (unrelated to timing) that amount to inferences Plaintiffs argued for in their briefs but required more explicit treatment in their complaint, including the FBI's findings on Sanabil, publicization of Israeli designations, BLOM's due diligence, and the untraceable nature of cash withdrawals.

In sum, BLOM urges this Court to ratify what the Circuit has held to be improper: presenting "Plaintiffs with a Hobson's choice: agree to cure deficiencies not yet fully briefed and decided [correctly] or forfeit the opportunity to replead." *Loreley*, 797 F.3d at 190. This Court should decline to do so.

## CONCLUSION

For the reasons stated above, this Court should vacate the judgment.

---

[4]     BLOM's post-argument letter brief, ECF no. 97 at 7, conversely, focused on arguing that *Kaplan II* supported its view of *Linde*, calling Plaintiffs' position on foreseeability—affirmed in *Honickman II*—"incontrovertibly wrong."

Dated: December 3, 2021
      Hackensack, NJ

Respectfully submitted,

By:    /s/ Michael J. Radine

**OSEN LLC**
Michael J. Radine, Esq.
Gary M. Osen, Esq.
Ari Ungar, Esq.
Dina Gielchinsky, Esq.
190 Moore St., Suite 272
Hackensack, NJ 07601
Telephone (201) 265-6400

**ZUCKERMAN SPAEDER LLP**
Shawn P. Naunton, Esq.
485 Madison Avenue, 10th Floor
New York, NY 10022
Telephone (646) 746-8655

**TURNER & ASSOCIATES, P.A.**
C. Tab Turner, Esq.
4705 Somers Avenue, Suite 100
North Little Rock, AR 72116
Telephone (501) 791-2277

**KOHN, SWIFT & GRAF, P.C.**
Steven M. Steingard, Esq.
Stephen H. Schwartz, Esq.
Neil L. Glazer, Esq.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone (215) 238-1700

*Attorneys for Plaintiffs*