UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MICHAL HONICKMAN, *et al.*,                          :
                                                     :
                          Plaintiffs,                :
                                                     :
          - against -                                :        No. 1:19-cv-00008-KAM-SMG
                                                     :
BLOM BANK SAL,                                       :
                                                     :
                          Defendant.                 :
                                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**DEFENDANT'S OPPOSITION TO MOTION FOR VACATUR OF JUDGMENT**

DECHERT LLP
Linda C. Goldstein
Tamer Mallat
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500

Justin M. Romeo (*pro hac vice*)
1900 K Street, Northwest
Washington, District of Columbia 20006
(202) 261-3300

Michael H. McGinley (*pro hac vice*)
Selby P. Brown (*pro hac vice*)
Cira Centre
2929 Arch Street
Philadelphia, Pennsylvania 19104
(215) 994-4000

*Attorneys for Defendant BLOM Bank SAL*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 3

    PLAINTIFFS HAD AMPLE NOTICE OF THE DEFICIENCIES IDENTIFIED
    BY THE SECOND CIRCUIT, YET REPEATEDLY DECLINED
    INVITATIONS AND OPPORTUNITIES TO AMEND. .................................................. 3

    A.    This Court's Opinion Dismissed the Complaint for the Same Defect
         Identified in the Second Circuit's Opinion. .......................................................... 3

    B.    Plaintiffs Had Ample Notice of the Deficiencies in their Complaint. .................. 5

         1.    Pre-Motion Conference ............................................................................ 6

         2.    Motion to Dismiss .................................................................................... 7

         3.    This Court's Opinion Dismissing the Complaint with Prejudice ............. 9

         4.    Second Circuit Briefing and Argument .................................................. 11

ARGUMENT ......................................................................................................... 14

    VACATUR UNDER RULE 60(B)(6) IS FORECLOSED BY PLAINTIFFS'
    DELIBERATE AND INFORMED STRATEGIC DECISIONS TO STAND ON
    THEIR COMPLAINT AT EVERY STAGE OF THIS CASE. ....................................... 14

    A.    Rule 60(b)(6) Does Not Relieve a Party of Its Strategic Choices ...................... 15

    B.    The *Kaplan II* Decision Does Not Justify Rule 60(b)(6) Relief. ....................... 18

CONCLUSION ...................................................................................................... 19

**TABLE OF AUTHORITIES**

**Cases**

*Ackermann v. United States*,
    340 U.S. 193 (1950) ..................................................................................15, 16

*Choice Hotels Int'l, Inc. v. Grover*,
    792 F.3d 753 (7th Cir. 2015) ...............................................................17

*Friedline v. New York City Dep't of Educ.*,
    No. 06 CIV. 1836JSR, 2009 WL 37828 (S.D.N.Y. Jan. 5, 2009) ...........................17

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. Cir. 1983) ..............................................................4

*Honickman v. BLOM Bank SAL*,
    432 F.Supp.3d 253 (E.D.N.Y. 2020) ............................................... *passim*

*Honickman v. BLOM Bank SAL*,
    6 F.4th 487 (2d Cir. 2021) ..................................................... *passim*

*Kaplan v. Lebanese Canadian Bank, SAL*,
    405 F.Supp.3d 525 (S.D.N.Y. 2019) .............................................. *passim*

*Kaplan v. Lebanese Canadian Bank, SAL*,
    999 F.3d 842 (2d Cir. 2021) ...................................................8, 10, 12

*Klapprott v. United States*,
    335 U.S. 601 (1949) ............................................................15

*Link v. Wabash R.R.*,
    370 U.S. 626 (1962) ............................................................17

*Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*,
    970 F.3d 133 (2d Cir. 2020) ....................................................14

*Mitchell v. Hobbs*,
    951 F.2d 417 (1st Cir. 1991) ...................................................16

*Nemaizer v. Baker*,
    793 F.2d 58 (2d Cir. 1986) .....................................................2, 15

*Paddington Partners v. Bouchard*,
    34 F.3d 1132 (2d Cir. 1994) ...................................................15

*Simone v. Prudential Ins. Co. of Am.*,
    164 F. App'x 39 (2d Cir. 2006) ...............................................17, 18

*Travelers Indem. Co. v. Sarkisian*,
    794 F.2d 754 (2d Cir. 1986)................................................................18

*United States v. Bank of New York*,
    14 F.3d 756 (2d Cir. 1994)...................................................14, 15, 16

*United States v. Int'l Bhd. of Teamsters*,
    247 F.3d 370 (2d Cir. 2001)...........................................................14

*In re Zimmerman*,
    869 F.2d 1126 (8th Cir. 1989) .......................................................16

## Statutes and Other Authorities

18 U.S.C. § 2333(d)(2) ...........................................................................8

Fed. R. Civ. P. 15(a) ...............................................................................2

Fed. R. Civ. P. 60(b) ...................................................................... *passim*

12 Moore's Federal Practice - Civil § 60.48.....................................14, 15

## PRELIMINARY STATEMENT

Plaintiffs' audacious request to vacate this Court's judgment of dismissal *after* the Court of Appeals affirmed that judgment does not come close to meeting the demanding standard of Fed. R. Civ. P. 60(b).  Plaintiffs repeatedly declined this Court's invitations to amend their Complaint—a strategic choice that they try to explain away on the contrived premise that they were not aware of the fatal deficiencies in their Complaint before the Second Circuit's ruling, which somehow deprived them of a "meaningful" opportunity to amend.[1]  The record exposes this argument as a sham because Plaintiffs had notice of the defects in the Complaint at every stage of this proceeding.  Indeed, the Motion to Dismiss filed by Defendant BLOM Bank S.A.L. ("BLOM") centered upon the very same pleading deficiencies that the Second Circuit later agreed were fatal.  Later events such as Judge Daniels' decision in *Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525 (S.D.N.Y. 2019) ("*Kaplan I*"), *vacated in part*, 999 F.3d 842 (2d Cir. 2021), and the *alternate* grounds for dismissal cited by this Court in its eventual opinion had no effect on the key issue: the Complaint's allegations regarding BLOM's general awareness of its alleged customers' ties to Hamas improperly relied upon undated or *post hoc* events, or upon allegations about other entities that were not BLOM customers.

Plaintiffs were first alerted to the deficiencies in their Complaint—including the very deficiencies later cited by the Second Circuit—when BLOM asked for a pre-motion conference to address its motion to dismiss the Complaint.  Yet they chose not to amend their Complaint even though they appear to concede that the additional allegations now proffered in the Proposed Amended Complaint ("PAC") were available to them at all earlier stages of this litigation.  The

---

[1]    Plaintiffs' Aug. 9, 2021 Pre-Motion Conference Letter re: Vacatur, at 3 (ECF No. 50).

futility *vel non* of the PAC is not before the Court at this time.[2]  But had Plaintiffs added their then-available allegations (or sought leave to amend) at any earlier stage, this Court (or the Second Circuit) could have considered whether those allegations in fact cured the Complaint's factual shortcomings *before* the Second Circuit affirmed this Court's judgment of dismissal with prejudice.

Rule 60(b)(6) permits vacatur only in "extraordinary circumstances."  *Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986).  It does not offer an avenue to relieve counsel of the consequences of their strategic choices after they have unsuccessfully litigated the case through appeal, particularly where those counsel are among the most experienced Anti-Terrorism Act practitioners in the country.  Nor does dismissal of their claims against BLOM leave Plaintiffs without recourse; collectively, they have brought at least twelve cases against other defendants for the same injuries alleged here.[3]  Plaintiffs' knowing and intentional choices to rest on the allegations of their original Complaint in this Court, to forgo an appeal of this Court's decision to dismiss that Complaint with prejudice, and to remain silent about any contemplated amendment

---

[2]      In accordance with the Court's Order of October 6, 2021, this memorandum of law addresses only vacatur, and not whether leave to amend under Fed. R. Civ. P. 15(a) is appropriate.

[3]      *See*, *e.g.*, *Kirschenbaum, et al. v. Islamic Repub. Of Iran,* No. 03-cv-01708 (D.D.C.); *Sokolow, et al. v. Palestine Liberation Org., et al.,* No. 04-cv-00397 (S.D.N.Y); *Linde, et al., v. Arab Bank, PLC,* No. 04-cv-02799 (E.D.N.Y.); *Wolf, et al. v. Credit Lyonnais, S.A.,* No. 07-cv-00914 (E.D.N.Y.); *Applebaum, et al. v. Nat'l Westminster Bank, PLC,* No. 07-cv-00916 (E.D.N.Y.); *Beer, et al. v. ASSA Corp.,* No. 13-cv-01848 (S.D.N.Y.); *Singer, et al. v. Bank of Palestine,* No. 19-cv-00006 (E.D.N.Y.);  *Averbach, et al. v. Cairo Amman Bank,* No. 19-cv-00004 (S.D.N.Y.); *Miller, et al. v. Credit Lyonnais, S.A. et al*, No. 19-cv-00002 (E.D.N.Y.); *Miller, et al. v. National Westminster Bank, PLC,* 19-cv-00001 (E.D.N.Y.); *Singer, et al. v. Bank of Palestine,* No. 19-cv-00006 (E.D.N.Y); *Spetner, et al. v. Palestine Investment Bank,* No. 19-cv-00005 (E.D.N.Y.).

until *after* the Second Circuit affirmed this Court's judgment of dismissal precludes Rule 60(b)

relief.  The motion for vacatur should be denied.

## STATEMENT OF FACTS

**Plaintiffs Had Ample Notice of the Deficiencies Identified by the Second
Circuit, Yet Repeatedly Declined Invitations and Opportunities to Amend.**

Plaintiffs try to justify their repeated declinations of leave to amend earlier on the basis

that "any such amendment at that time would have been futile" because the pleading standards

applied by this Court in *Honickman v. BLOM Bank SAL*, 432 F. Supp. 3d 253 (E.D.N.Y. 2020)

("*Honickman I*"), *aff'd*, 6 F.4th 487 (2d Cir. 2021), were purportedly incorrect.  ECF No. 50 at 1.

They submit that the Complaint's deficiencies "were not curable until the Second Circuit

clarified the pleading standard."  *Id.* at 3.  This Court's opinion, as well as the parties' briefing

and oral arguments in this Court and in the Second Circuit, refute both contentions.

### A.    This Court's Opinion Dismissed the Complaint for the Same Defect
### Identified in the Second Circuit's Opinion.

As Plaintiffs noted in their Pre-Motion Conference Letter to the Court, the Second Circuit

affirmed dismissal of the Complaint on the ground that its "allegations do not support an

inference that BLOM Bank was aware of the Three Customers' ties with Hamas prior to the

relevant attacks . . . ."  ECF No. 50 at 2 (quoting *Honickman v. BLOM Bank SAL,* 6 F.4th 487,

501 (2d Cir. 2021) ("*Honickman II*").  Because this Court had rested its decision on the same

basis, Plaintiffs' suggestion that they were somehow unaware of this defect until after the Second

Circuit affirmed is simply incorrect.  Rather than confront this fundamental problem with their

theory, Plaintiffs focus on the *other* alternative grounds for this Court's analysis, which the

Second Circuit declined to adopt in *dicta*.  But the Court should not be fooled by this diversion.

Plaintiffs' argument ignores the fact that this Court *also* deemed the Complaint insufficient for

the *same* reasons that the Second Circuit deemed it insufficient.  And it ignores the fact that BLOM Bank repeatedly argued that the Complaint was deficient for those same reasons— namely, the timeframe of the alleged facts purportedly establishing BLOM's general awareness and the irrelevance of allegations about entities that are not alleged to have been BLOM customers.

In affirming dismissal of the Complaint, the Second Circuit explained that "the public sources cited in the complaint do not plausibly support an inference that BLOM Bank had the requisite general awareness *at the time* that it provided banking services to the Three Customers."  *Honickman II*, 6 F.4th at 501 (emphasis added).  The court drew this requirement from *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983): "[T]he defendant must be generally aware of [its] role ... *at the time that [it] provides the assistance*."  *Id.* (emphasis added by *Honickman II*).  And the Second Circuit's requirement of contemporaneous awareness affirmed the core holding on this subject in this Court's opinion:

> Plaintiffs cite to press articles, government actions, and allegedly 'public knowledge' discussing a connection between the Three Customers and Hamas as evidence from which a jury could infer that BLOM might have known of such a nexus. Yet, Plaintiffs fail plausibly to allege that BLOM or any of its employees actually knew or should have known of any of the cited sources, or that BLOM would otherwise have a reason to review or consider these sources in the course of its operations.  *This is particularly notable given that all the sources cited regarding the Three Customers and their connection to Hamas are either undated or were dated after the last of the attacks*.

*Honickman I*, 432 F. Supp. 3d at 265 (emphasis added).  Thus, this Court correctly held that undated or *post hoc* allegations could not, on their own, establish a defendant's contemporaneous "general awareness."

- 4 -

The Second Circuit also necessarily agreed with this Court's holding that Plaintiffs' reliance on alleged transfers *to* the alleged customers from other entities later designated for their association with Hamas was not sufficient to satisfy the general awareness requirement: "Without any further allegations, a defendant-bank's transfers of funds from *non-customers* associated with an FTO to the defendant's customers does not compel an inference that the defendant knew of its *customers'* connections to that FTO." *Honickman II*, 6 F.4th at 502 n.20 (emphases in original); *compare Honickman I*, 432 F.Supp.3d at 265 n.9 (explaining why allegations about these alleged transfers were insufficient to establish general awareness).

### B. Plaintiffs Had Ample Notice of the Deficiencies in their Complaint.

Because the Second Circuit's dismissal focused on the timing mismatch between Plaintiffs' allegations regarding general awareness and their allegations regarding substantial assistance, the PAC now attempts to offer more allegations that purport to concern facts during the "relevant period." *See* ECF No. 50 at 3; *see also*, PAC ¶¶ 577, 661–663, 667, 687, 691–96, 713–15, 724, 729, 734–36, 764–68, 775–91.[4]  Importantly, Plaintiffs have not suggested that these allegations were previously unavailable to them or offered any other reason why they could not have added these allegations sooner.  Indeed, at multiple turning points in this case's procedural history, Plaintiffs could have amended their Complaint as of right or sought leave to amend.  And, at each point, Plaintiffs were on notice that their Complaint was deficient because, among other reasons, the key allegations going to BLOM's general awareness were either undated or post-dated the time of the alleged assistance.

---

[4]     The PAC also adds other new allegations that do not purport to cure that defect. *See, e.g.*, PAC ¶¶ 514–15, 533, 539–41, 543–49, 554–76, 578–80, 614–17, 622– 23, 625–31, 642–43, 646–60, 668–85, 733, 737–62.

1.      **Pre-Motion Conference**

Starting with BLOM's Pre-Motion Conference letter to the Court in May 2019, BLOM

highlighted the *post hoc* nature of Plaintiffs' allegations concerning its general awareness of its

purported customers' affiliation with Hamas.  *See* ECF No. 20.  The letter argued in pertinent

part that "the Complaint alleges nothing more than that BLOM provided routine banking

services to organizations that *later* were revealed to be connected to Hamas." *Id.* at 2 (emphasis

added).  It went to explain: "But none of the allegations, if true, would establish that BLOM was

aware of that connection *at the time it provided those banking services* or, more importantly, that

BLOM was aware that the banking services it provided to those customers were connected to

alleged terrorist activity."  *Id.* (emphasis added)*.*  BLOM's letter did not rely upon the District

Court opinion in *Kaplan I*, which had not yet been decided.

In response, Plaintiffs pointed to specific allegations in the Complaint that purportedly

supported an inference that BLOM was generally aware of connections between its alleged

customers and Hamas, including an allegation that a "current" senior Hamas leader served on the

board of BLOM's alleged customer Sanabil Association for Relief and Development ("Sanabil")

at some unspecified time.  ECF No. 21 at 2 (citing Compl. ¶¶ 591–92).  Plaintiffs also pointed to

the allegation of a transfer from a third party, Al Aqsa Foundation, to Sanabil's account *after* Al

Aqsa was designated by the United States.  *Id.* at 2.  Importantly, nothing in the May 2018 Pre-

Motion Conference letters suggested that Plaintiffs were required to plead that BLOM actually

read the public source information invoked as a basis for its alleged general awareness (the later

holding of this Court that Plaintiffs argue was insurmountable).  Instead, the letters from both

parties focused on the *timing* of the alleged public source information and its probative value.

At the Pre-Motion Conference, the Court asked Plaintiffs' counsel: "Are there any additional facts you could add to the allegations that the defendant is challenging here or are you comfortable standing on your complaint as it is?"  Hr'g Tr. 6:9–11, May 15, 2019.  Even though BLOM had identified the timeline deficiencies of the Complaint, Mr. Osen expressly declined the Court's invitation, stating "No, I think we are prepared to brief it based on the arguments presented in the pre-motion letter."  *Id.* at 6:15–16.  When pressed by the Court on whether Plaintiffs would seek leave to amend if the Court granted BLOM's motion, Mr. Osen stated "sitting here today based on what was represented as the arguments in the pre-motion letter, we would not seek leave to amend."  *Id.* at 6:22–24; *see also Honickman I*, 432 F. Supp. 3d at 261–62 (relying upon counsel's declination to dismiss complaint with prejudice).  After the conference, the Court issued an Order stating that the "Court offered Plaintiffs an opportunity to amend their complaint to add additional information in response to the arguments raised by Defendant," but "Plaintiffs declined to do so and represented that they would not be seeking to amend their Complaint in this regard."  ECF Dkt. Minute Entry and Scheduling Order, May 15, 2019.

## 2.  Motion to Dismiss

Consistent with its Pre-Motion Conference Letter, BLOM's Memorandum of Law in support of its Motion to Dismiss focused on the dates of the Complaint's allegations regarding knowledge.  BLOM argued that the allegations do not plausibly suggest that BLOM knew of the purported customers' alleged affiliations with Hamas during the relevant time period, *i.e.*, *before* the attacks, including because the U.S. government designations of two of those customers occurred *after* the relevant time period (and the third was never designated).  ECF No. 36-1 at 8.  BLOM noted that all of the Plaintiffs' other contentions about the alleged customers' purported

connections to Hamas either did not establish that those purported connections existed during the relevant period (*i.e.*, before the attacks) or did not show that BLOM would have reason to be aware of such alleged connections before the attacks. *Id.* at 9. For each alleged customer, BLOM explained that the allegations of general awareness were either undated or post-dated the relevant time period. *Id.* at 14–19.[5]

In their opposition brief, Plaintiffs argued that their allegations indeed covered the "relevant period," ECF No. 37 at 17–21, and again focused on public source allegations about Al Aqsa and other third parties allegedly connected to Hamas that transferred funds to BLOM's alleged customers, *id.* at 18–19. They did not claim that other public sources not alleged in the Complaint could connect any of BLOM's customers to Hamas during the relevant time period. In short, Plaintiffs were defending the Complaint's allegations as being sufficiently contemporaneous to support the inference of general awareness.

After all briefs had been submitted on BLOM's motion, Judge Daniels' opinion in *Kaplan I* was issued. *Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525 (S.D.N.Y. 2019). During oral argument of BLOM's motion, Plaintiffs' counsel urged that the *Kaplan I* decision "requires a level of proof that is out of step with JASTA, out of step with *Linde* [*v. Arab Bank, PLC*, 882 F.3d 314 (2d Cir. 2018)] and would be impossible to meet." Hr'g Tr. at 27:10–12, Nov. 25, 2019. This Court did not then indicate whether it would adopt any aspect of Judge Daniels' reasoning. This Court did, however, explain that the Second Circuit encourages

---

[5]    BLOM did note that the Complaint did not allege that BLOM "*knew* it was providing material support to a Foreign Terrorist Organization." *Id.* at 13. This argument is consistent with the later ruling of the Second Circuit in *Kaplan v. Lebanese Canadian Bank, SAL* that JASTA does require "actual knowledge . . . that the defendant 'know[]' that it is providing 'assistance,' 18 U.S.C. § 2333(d)(2)—whether directly to the FTO or indirectly through an intermediary." 999 F.3d 842, 863–64 (2d Cir. 2021) ("*Kaplan II*").

amendment of complaints *before* motion practice, and asked Plaintiffs' counsel if everything the Court needed to consider was already alleged in the Complaint.  *Id.* at 25:3–9.  After Mr. Radine responded "Yes," the Court asked more pointedly: "There are no facts that you would have to offer to address some of the contentions of the defendants regarding knowledge, especially?"  *Id.* at 25:13–16.  In response to this question—whether Plaintiffs could address even *some* of BLOM's contentions about knowledge—Mr. Radine responded "*I think we could always add allegations*, but the—we believe the complaint goes far enough in saying that BLOM holding accounts for Specially Designated Global Terrorists designated for this conduct for financing HAMAS, was generally aware of its role in that [il]licit conduct . . . ."  *Id.* at 25:17–22 (emphasis added).  Mr. Radine went on to explain that in some cases even "tenuous inferences" of scienter should be enough at the pleading stage, and Plaintiffs "think we have more than tenuous inferences here."  *Id.* at 27:4–6.

### 3.     This Court's Opinion Dismissing the Complaint with Prejudice

This Court's opinion granting BLOM's Motion to Dismiss identified multiple defects in the Complaint's allegations.  Among other flaws, the Court held that the Complaint "does not plausibly allege that BLOM was generally aware of any connection between the Three Customers and Hamas."  *Honickman I*, 432 F. Supp. 3d at 265.  Specifically, this Court concluded "Plaintiffs' allegations therefore fail to raise above the speculative level the specter that BLOM was aware of a connection between the Three Customers and Hamas *at the time* it provided financial services to the Three Customers."  *Id.* (emphasis added).  The Court's opinion plainly highlighted the *dates* of the cited sources as a key deficiency, explaining that "all of the sources cited regarding the Three Customers and their connection to Hamas are either undated or were dated after the last of the attacks."  *Id.*  For example, "during the period in question, none of

the Three Customers was itself designated during the time BLOM processed transactions on its

behalf."  *Id.*  This Court rejected Plaintiffs' theory that BLOM's "general awareness" could be

established based on the Complaint's allegations about Al-Aqsa and other entities that were not

alleged to be BLOM customers.  *Id.*

Separately, the Court's opinion also relied upon Judge Daniels' decision in *Kaplan I*,

which had held that "the plaintiffs 'nowhere allege[d]'" that the defendant bank "'read or was

aware of'" the FTO's open, public acknowledgments of its connections to the bank's customers.

*Id.* at 267 (quoting *Kaplan I*, 405 F. Supp. 3d at 535).  And this Court held that "[t]he same

analysis applies even more strongly here, given the relatively greater strength of the allegations

in *Kaplan*."  *Id.*  Although the Second Circuit later held that plaintiffs need not allege that a

defendant bank "knew or should have known of the public sources at the pleading stage,"

*Honickman II*, 6 F.4th at 501; *see also Kaplan II*, 999 F.3d at 864–65, it did agree that "the

limited public sources plaintiffs cite pale in comparison to the detailed, numerous sources that

sufficed [to plead general awareness] in *Kaplan*," *id.* at 502.

Finally, this Court considered whether Plaintiffs should be granted leave to amend.  The

Court noted that it "typically grants plaintiffs an opportunity to amend their complaints following

dismissal, to address any deficiencies raised by the Court's order."  *Honickman I*, 432 F. Supp.

3d at 270.  Nonetheless, in this case "Plaintiffs here do not request leave to amend, and

specifically declined the Court's offer to do so at the pre-motion conference."  *Id.*; *see also* ECF

Dkt. Minute Entry and Scheduling Order, May 15, 2019.  Accordingly, "[i]n light of Plaintiffs'

rejection of the opportunity to amend their pleading at the pre-motion conference, and the fact

that they have not identified any additional facts they could allege which would address the

deficiencies in their complaint," the Court dismissed the Complaint with prejudice.
*Honickman I*, 432 F. Supp. 3d at 270–71.

### 4.      Second Circuit Briefing and Argument

Plaintiffs' opening brief on appeal again doubled down on arguing that their allegations
of undated or *post hoc* publicly available information supported an inference of BLOM's general
awareness.  For example, on appeal Plaintiffs suggested that BLOM's general awareness could
be inferred from the fact that Israel had "designated" Sanabil, without saying what that
designation meant or whether Israeli designations were publicized.  (Cir. Dkt. 20-575-cv) ECF
No. 52 at 33–34.  They side-stepped the lack of contemporaneous public sources connecting the
alleged customers to Hamas by urging that the Complaint "discussed facts that were previously
knowable."  *Id.* at 31 n.11.  And, again, Plaintiffs focused on U.S. designations of third parties
who were not alleged to be BLOM customers.  *See, e.g.*, *id.* at 37 (discussing Holy Land
Foundation).

Notably, Plaintiffs' briefing in the Second Circuit did not challenge the fact that the
District Court had dismissed the Complaint with prejudice.  At no point in their briefing or in
their oral argument did Plaintiffs suggest that the Court erred by not giving them another chance
to amend their claim, or that they could plead contemporaneous public sources connecting
BLOM's alleged customers to Hamas.  Nor did Plaintiffs argue that, if the Second Circuit were
to hold that direct evidence of a bank's knowledge is not required to plead "general awareness,"
that a remand would be appropriate so they could replead their claims.

Meanwhile, in its appellee brief, BLOM argued that the allegations must show general
awareness *at the time* the assistance was provided, and proceeded to explain that the timing of
the publications alleged in the Complaint was insufficient.  (Cir. Dkt. 20-575-cv) ECF No. 66 at

27, 34–39.  In particular, BLOM called out Plaintiffs' reliance on "undated or post-dated"
publications.  *Id.* at 61–62.  In their reply brief, Plaintiffs did not intimate that they were aware of
other sources published during the relevant period.  Instead, they urged that the public sources
cited in the Complaint were sufficient to allege general awareness, *see* (Cir. Dkt. 20-575-cv)
ECF No. 76 at 20–23, a position they repeated at oral argument.  Hr'g Tr. at 6, 10, Dec. 10, 2020
(arguing that the "allegations we presented . . . would have been enough for the bank to be
generally aware of the role that it's in").  After oral argument, in December 2020 the Second
Circuit held the appeal in this case in abeyance pending its decision in the appeal of *Kaplan I*,
and ordered the parties to submit supplemental letter briefs addressing the significance of the
*Kaplan II* decision within 30 days of when the decision was issued.  (Cir. Dkt. 20-575-cv) ECF
No. 90.

The Second Circuit issued its decision in *Kaplan II* on June 9, 2021.  *See Kaplan v.
Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021).  In its opinion, the Second Circuit
reversed the district court's dismissal of the JASTA claim asserted against the bank defendant,
Lebanese Canadian Bank ("LCB"), on the ground that "the SAC nowhere allege[d] … that
[LCB] read or was aware of such sources."  *Kaplan II*, 999 F.3d at 864–65 (quoting *Kaplan I*,
405 F.Supp.3d at 535).  The Second Circuit held that the "general awareness" element of an
aiding-and-abetting claim connotes "something less than full, or fully focused, recognition" and
thus concluded that plaintiffs need not plead that a bank defendant displayed "awareness" of its
customer's links to international terrorism.  *See id*. at 864–65.  It concluded that:

> the SAC as a whole contained sufficient factual allegations as to those repeated *pre-
> 2006* statements by Hizbollah about Shahid, Bayt al-Mal, and Yousser—and
> certainly in the period *between LCB's formation in 1998 . . . and the 2006 Summer
> rocket attacks*—make it plausible that LCB knew that those three customers . . .
> were part of Hizbollah.

*Id.* at 865 (emphasis added).

At this juncture, Plaintiffs had the benefit of the Second Circuit's further explanation of the nature of allegations required to state a claim under JASTA. Specifically, they knew that *Kaplan I*'s insistence that plaintiffs plead a defendant's "awareness" of public sources connecting a customer to international terrorism—which this Court had cited in its opinion, *see Honickman I*, 432 F.Supp.3d at 267—had been reversed by the Second Circuit. They also knew, based on the Second Circuit's emphasis on the time period of the alleged public statements in *Kaplan II*, that the Second Circuit might agree that the Complaint was deficient because it did not allege contemporaneous publications linking BLOM's alleged customers to Hamas. Nonetheless, in their post-*Kaplan II* submission to the Second Circuit, Plaintiffs did not ask that the court remand the case with leave to amend should it find the timing of their allegations in the Complaint to be insufficient. *See* (Cir. Dkt. 20-575-cv) ECF No. 98. Instead, they urged that the allegations in the Complaint were sufficient to allege a claim under *Kaplan II*'s definition of general awareness. *See id.* at 5 (stating that the Complaint "provided detailed allegations supporting the plausible inference that BLOM knew the Hamas affiliations of the Three Customers and their transferors."). This was yet *another* opportunity for Plaintiffs to seek leave to amend, coming at a juncture when Plaintiffs knew *both* that (i) this Court had relied upon the *Kaplan I* legal standard, which the Second Circuit had held to be erroneous; and (ii) the Second Circuit was looking to contemporaneous public sources to determine "general awareness." They made no such request. *See generally id.* at 1–16.

## ARGUMENT

### Vacatur Under Rule 60(b)(6) Is Foreclosed By Plaintiffs' Deliberate and Informed Strategic Decisions to Stand on their Complaint at Every Stage of this Case.

Motions for relief from judgment under Rule 60(b) are "generally not favored" and are granted only for "exceptional circumstances." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001) (affirming denial of Rule 60(b) motion). These salutary limitations are necessary to respect the "finality of judgments." *United States v. Bank of New York*, 14 F.3d 756, 759 (2d Cir. 1994) (affirming denial of Rule 60(b) motion to set aside consent decree). In the words of one leading treatise, to "read the provisions otherwise would permit the discretion vested in a court by Rule 60(b) to be used to make unnecessary inroads into judgments that would otherwise be final, or to transform Rule 60(b) into a substitute for appeals." 12 Moore's Federal Practice - Civil § 60.48(1) (2021).

Here, Plaintiffs have moved for relief under subsection (6) of Rule 60(b), which provides that "the court may relieve a party . . . from a final judgment for . . . any other reason [than those outlined in subsections (1)–(5)] that justifies relief." Fed. R. Civ. P. 60(b)(6).[6] Rule 60(b)(6) is "a catch-all provision that 'is properly invoked only when there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship, and when the asserted grounds for relief are not recognized in clauses (1)–(5) of the Rule.'" *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 143 (2d Cir. 2020) (quoting *Nemaizer v. Baker*,

---

[6]     Reasons for seeking relief under subsections (1)–(5) include: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial; (3) fraud, misrepresentation, or misconduct by an opposing party; the judgment is (4) void or (5) has been satisfied, released or discharged or is based on an earlier judgment that has been reversed or vacated. Fed. R. Civ. P. 60(b).

793 F.2d 58, 63 (2d Cir. 1986)); *see United States v. Bank of New York*, 14 F.3d at 759 (similar).

Vacatur is usually not granted unless "the movant is completely without fault for his or her

predicament; that is, the movant was almost unable to have taken any steps that would have

resulted in preventing the judgment from which relief is sought."  12 Moore's Federal Practice -

Civil § 60.48(3)(b) (2021).  This distinction arises from two seminal Supreme Court cases:

*Ackermann v. United States*, 340 U.S. 193, 200 (1950), which held that vacatur under Rule

60(b)(6) was unavailable because the movant made a "voluntary, deliberate, free untrammeled

choice" not to appeal the judgment that he sought to vacate, and *Klapprott v. United States*, 335

U.S. 601, 614 (1949), which held that vacatur was available because the movant was ill, wrongly

incarcerated, had no funds or counsel and was "no more able to defend himself . . . than he

would have been had he never received notice" of the proceeding against him.  Because

subsection "(b)(6) applies only when no other subsection is available, grounds for relief may not

be mistake, inadvertence, surprise or excusable neglect."  *Nemaizer v. Baker*, 793 F.2d at 63.

Rather, they must be truly extraordinary and completely outside the movant's control.

A "motion seeking [Rule 60(b)] relief is addressed to the sound discretion of the district

court with appellate review limited to determining whether that discretion has been abused."  *Id.*

at 61–62.  "This Circuit has indicated . . . that since 60(b) allows extraordinary judicial relief, it

is invoked only if the moving party meets its burden of demonstrating 'exceptional

circumstances.'" *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1142 (2d Cir. 1994) (citing

*Nemaizer v. Baker*, 793 F.2d at 61).  Plaintiffs do not come close to meeting this burden

### A.      Rule 60(b)(6) Does Not Relieve a Party of Its Strategic Choices.

The exceptional remedy of vacatur is not a vehicle to relieve a party of the consequences

of its litigation choices.  For example, in *Bank of New York*, the Second Circuit declined to

permit vacatur of a consent decree that embodied the movant's "conscious and informed choice of litigation strategy" when that choice proved to be disadvantageous.  14 F.3d at 759; *see also Ackermann,* 340 U.S. at 198 (vacatur not available to relieve party of its decision not to appeal an adverse judgment).  As the Supreme Court has reasoned, "[t]here must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from."  *Id.*

Here, this Court twice suggested that Plaintiffs might amend their Complaint, and Plaintiffs twice declined.  *See* Hr'g Tr. at 6, May 15, 2019 (expressly declining Court's invitation at motion to dismiss pre-motion conference to amend the complaint); Hr'g Tr. at 25:17–19, Nov. 25, 2019 (explaining to Court at motion to dismiss hearing that "[Plaintiffs] could always add allegations, but the—we believe the complaint goes far enough. . .").  Plaintiffs admit as much. ECF No. 50 at 1.  Undoubtedly, their conscious decision to waive any right to an amendment was a strategic choice that was made both knowingly and intentionally.  And, consistent with the Supreme Court's guidance in *Ackermann*, courts are seldom forgiving of parties' deliberate decisions not to avail themselves of procedures that are "legally available" to them.  *See In re Zimmerman*, 869 F.2d 1126, 1128 (8th Cir. 1989).  For example, in *In re Zimmerman*, the Eighth Circuit affirmed a bankruptcy court's denial of a Rule 60(b)(6) motion that "failed to show that extraordinary circumstances had prevented [movant] from obtaining relief through available bankruptcy procedures," which included a failure to file timely objections to the bankruptcy petition and debtor's discharge of the debt owed to the movant.  *Id.* at 1127.

Similarly, when Plaintiffs later appealed this Court's judgment dismissing the Complaint, their appeal never argued that it was improper for the Complaint to be dismissed with prejudice. The case law is clear that that an unexplained failure to take an appeal when it was available precludes relief under Rule 60(b)(6).  *Mitchell v. Hobbs*, 951 F.2d 417, 420 (1st Cir. 1991)

(holding that "[r]elief from judgment cannot be obtained under Rule 60(b)(6) unless the movant can demonstrate that 'extraordinary circumstances' prevented a timely appeal") (citing *Ackerman*, 340 U.S. at 197–202); *Simone v. Prudential Ins. Co. of Am.*, 164 F. App'x 39, 40 (2d Cir. 2006) (same).  Plaintiffs' unexplained—and inexplicable—decision not to raise this Court's dismissal with prejudice in their appeal on other issues, or to seek the Second Circuit's permission to amend the Complaint if it disagreed with their position on the sufficiency of their allegations, is a separate ground to deny vacatur.

There can be no doubt that Plaintiffs should be held to the choices made by their attorneys.  *See, e.g.*, *Choice Hotels Int'l, Inc. v. Grover*, 792 F.3d 753, 754 (7th Cir. 2015) (Easterbrook, J.) (affirming denial of Rule 60(b)(6) motion that sought to vacate default judgment after defendants' first lawyer failed to answer the complaint; the court held that "[l]awyers sometimes fail to protect their clients' interests . . . Litigants who choose a poor lawyer may bear the costs themselves, or shift them to the lawyer, but cannot shift them to an adversary who bore no fault for the problem"); *Friedline v. New York City Dep't of Educ.*, No. 06 CIV. 1836JSR, 2009 WL 37828, at *2 (S.D.N.Y. Jan. 5, 2009) (denying Rule 60(b)(6) motion predicated on purported errors by prior counsel because a client "cannot now avoid the consequences of the acts or omissions of [her] freely selected agent"), *aff'd sub nom. Cruz v. New York City Dep't of Educ.*, 376 F. App'x 82 (2d Cir. 2010); *see also Link v. Wabash R.R.*, 370 U.S. 626 (1962) (holding that litigants are bound by the acts and omissions of their chosen lawyers).[7]  That general rule has particular weight here, where Plaintiffs' counsel also

---

[7]     The *Friedline* court also noted that "[t]o be 'extraordinary circumstances' for purposes of Rule 60(b)(6), a lawyer's failures must be so egregious and profound that they amount to the abandonment of the client's case altogether, either through physical disappearance, or constructive disappearance." 2009 WL 37828, at *2 (quoting *Harris v. United States*, 367 F.3d 74, 81 (2d Cir. 2004)).  That was plainly not the case here.

represented the plaintiffs in *Kaplan II*, and are self-described practitioners "stand[ing] at the forefront of groundbreaking civil counter-terrorism litigation" who avow to maintain "high standards of professionalism."[8]  Moreover, vacatur is not needed to remedy any injustice, because Plaintiffs have asserted a dozen lawsuits against other defendants seeking to recover damages for the very same injuries alleged in this case.

>    **B.    The *Kaplan II* Decision Does Not Justify Rule 60(b)(6) Relief.**

Plaintiffs' *post hoc* rationalization for waiting to seek leave to amend is that they could not "meaningfully" amend their Complaint before the Second Circuit issued its decision in *Kaplan II* and *Honickman II*.  ECF No. 50 at 3.  Even assuming that this contention had any basis in fact, "a change in decisional law is not a basis for Rule 60(b)(6) relief."  *Travelers Indem. Co. v. Sarkisian,* 794 F.2d 754, 757 (2d Cir. 1986); *Simone v. Prudential Ins. Co. of Am.,* 164 F. App'x 39, 40 (2d Cir. 2006) (holding that change in decisional law is not grounds for relief under Rule 60(b)(6) particularly where "party had failed to appeal and then sought to obtain the benefit of another party's appeal in a related case").

Significantly, there was no determinative change in decisional law.  The defect in the Complaint identified by the Second Circuit was also one of the defects identified by this Court in its order of dismissal.  The Second Circuit held that "Plaintiffs' aiding-and-abetting claim fails because the allegations do not support an inference that BLOM Bank was aware of the Three Customers' ties with Hamas prior to the relevant attacks, thereby undermining the second element of general awareness."  *Honickman II*, 6 F.4th at 501.  The Second Circuit's ruling is virtually identical to this Court's ruling that "Plaintiffs' complaint does not plausibly allege that

---

[8]    *See* Osen LLC website, *available at* https://www.osenlaw.com/ (last accessed Dec. 9, 2021).

BLOM was generally aware of any connection between the Three Customers and Hamas." *Honickman I,* 432 F. Supp. 3d at 265.  Plaintiffs' references to *other* aspects of this Court's ruling that were not endorsed by the Second Circuit are all irrelevant.

Had Plaintiffs sought leave to amend before (or during the course of) their appeal, their request could have been considered by this Court and by the Second Circuit when it issued its decision in the recently concluded appeal, a course that would have done less violence to the principle of finality than the post-appeal motion Plaintiffs now make.  A grant of vacatur in this case would open the door to other such requests whenever an appellate court affirms the dismissal of a complaint on some, but not all, of the grounds addressed in a district court's decision.  That commonplace occurrence is surely not the kind of "extraordinary circumstance" that could justify such exceptional relief.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for vacatur of the judgment issued by this Court and affirmed by the Second Circuit should be denied.

Dated:  New York, New York
      December 13, 2021

               DECHERT LLP


By:       */s/ Linda C. Goldstein*
          Linda C. Goldstein
          Tamer Mallat
          Three Bryant Park
          1095 Avenue of the Americas
          New York, New York 10036
          (212) 698-3500

          Justin M. Romeo (*pro hac vice*)
          1900 K Street, Northwest
          Washington, District of Columbia 20006
          (202) 261-3300

Michael H. McGinley (*pro hac vice*)
Selby P. Brown (p*ro hac vice*)
Cira Centre
2929 Arch Street
Philadelphia, Pennsylvania 19104
(215) 994-4000

*Attorneys for Defendant BLOM Bank SAL*